In the
United States Court of Appeals
For the Seventh Circuit

No. 01-3215

In the Matter of Grand Jury Proceedings,
(Grand Jury Empaneled June 2000 in
Springfield, Illinois)

Appeal from the United States District Court
for the Central District of Illinois.
No. 01 GJ 28--Joe B. McDade, Chief Judge.

Argued and Decided September 19, 2001
Published February 14, 2002

  Before Bauer, Kanne, and Diane P. Wood,
Circuit Judges.

  Kanne, Circuit Judge.  The district court
found Sergius A. Rinaldi in contempt for
failing to produce documents responsive
to a grand jury subpoena and
conditionally fined and imprisoned him.
On August 13, 2001, the district court
denied Rinaldi's motion for
reconsideration, and he filed his notice
of appeal on August 20, 2001. Oral
argument on the appeal was heard on
September 19, 2001, and on that day we
summarily affirmed the order of contempt
and denied Rinaldi's motion for release
pending appeal./1

I.  History

  Rinaldi is an orthodontist with offices
in Springfield and Edwardsville,
Illinois. On January 23, 2001, the grand
jury issued a subpoena to Rinaldi,
demanding the production of records
related to Rinaldi's orthodontic practice
by February 7, 2001. The subpoenaed
records included, inter alia, patient
sign-in sheets, daily schedules, calendar
schedules of patients, and patient
charts. Following several informal
conferences between the government and
Rinaldi, numerous documents demanded by
the subpoena remained outstanding.
Specifically, the government required
production of (a) original case files and
claim forms for twenty-five patients; (b)
the original explanation medical benefit
forms for these patients; (c) Rinaldi's
appointment books for the years 1995-99;
and (d) the sign-in sheets, daily and

weekly appointment logs, and daily cancellation sheets for the years 1995-2000. The district court ordered Rinaldi to appear personally on June 15, 2001 to show cause why he should not be held in contempt for failing to comply with the grand jury subpoena by producing the documents. On June 15, 2001, the district court ordered Rinaldi to comply with the subpoena in full and produce the documents. Pursuant to an agreement between Rinaldi and the government, Rinaldi was granted an extension until July 6, 2001, but Rinaldi never produced the documents. On July 10, 2001, the district court held a contempt hearing regarding Rinaldi's failure to comply with the June 15 order.

At that hearing, FBI Special Agent Kirk Staats testified that a consensual search of Rinaldi's Springfield office was executed on June 26, 2001, and of his Edwardsville office on July 3, 2001. Agent Staats testified that the July 3 search was scheduled to begin at 7:00 a.m. At approximately 6:30 a.m., law enforcement officials observed Rinaldi place a box in a dumpster outside of the McDonald's restaurant next to his office. Agent Staats testified that FBI agents recovered the box from the dumpster and found within the box several sign-in sheets covered by the subpoena. Agent Staats stated that Rinaldi had previously denied the existence of these sign-in sheets.

The government also called Judy Keran to testify. She stated that she has worked for Rinaldi at his Springfield office since May 1994, and addressed the accumulation and storage of sign-in sheets prior to January 23, 2001. Keran testified that the sign-in sheets would initially be left at the Springfield office's reception desk. On a daily basis, Keran would then transfer the sign-in sheets to a desk drawer. When a significant amount of sign-in sheets accumulated in that drawer, Keran dated, banded, and placed the sign-in sheets in a closet in the Springfield office. Keran testified that the sign-in sheets remained in that closet from May 1994 until approximately March or April 2001. Keran also testified that appointment books from 1994 through the current year were located in the closet prior to January 23, 2001.

Keran then testified that sometime after January 23, 2001, Rinaldi removed all the sign-in sheets and appointment books that were stored in the closet. Keran noted that she went into the closet on a daily basis and that the sign-in sheets and appointment books were removed from the closet "definitely after the [issuance of the] subpoena" on January 23, 2001. Keran stated that she asked Rinaldi about their removal, and that Rinaldi told her that he had removed the sign-in sheets and appointment books. Keran was then asked whether Rinaldi had destroyed any records on any previous occasion. Keran responded, "[a]bsolutely not. Dr. Rinaldi did not want us to destroy anything. He likes . . . to keep everything . . . down to the simplest items" and that Rinaldi saved records "just in case" they were needed in the future.

Rinaldi then testified on his own behalf. He stated that he had not destroyed or removed any sign-in sheets since the service of the subpoena. Rinaldi testified that he had placed the box in the dumpster because he deemed the material "personal" and not responsive to the subpoena. He then stated that contrary to Keran's testimony, all the sign-in sheets were systematically destroyed within one or two months after their creation. Therefore, Rinaldi concluded, he could not produce any responsive documents because the documents no longer existed.

At the conclusion of the hearing, the court made several factual findings and credibility determinations. Specifically, the court noted that it gave "absolutely no credence" to Rinaldi's testimony and found that "Dr. Rinaldi ha[d] lied" and "h[ad not] been truthful with th[e] Court." Further, the court found that the records did exist because "[t]he fact that . . . [Rinaldi] had been observed taking a box of records out of his office and putting them in or by the Dumpster persuade[d] the Court that [Rinaldi] ha[d] these . . . records in his possession [but was] not turning them over." Further, the court noted that there had "been no accounting for the boxes of records that Judy Keran put together and put in the" Springfield closet. The court then stated that there had been "no evidence" that Rinaldi

destroyed the evidence. Therefore, the court concluded that it found that the documents were in still existence, that they were in Rinaldi's possession or control, and that Rinaldi would not produce the records voluntarily.

The court then ordered the following:

I don't believe [Rinaldi is] ever going to furnish these records voluntarily, because [Rinaldi] doesn't think the Government has a right to them. And I think he's in wilful contempt of this Court's order requiring him to produce these records by July 6th, and the Court w[ill] sentence the Defendant to the custody of the Marshal for up to six months . . . and to be released sooner upon his furnishing the records called for to the United States Attorney's Office.

(Emphases added). The court also issued an order fining Rinaldi $1,500.00 per day "starting 7/10/01 [and continuing] until [Rinaldi] complie[d] with [the] grand jury subpoena." The initial order stated that the district court found Rinaldi in criminal contempt, but the district court amended the order to an order of civil contempt on July 19, 2001.

On August 13, 2001, the district court denied Rinaldi's motion for reconsideration. The district court reaffirmed its earlier order of civil contempt and recommitted Rinaldi to incarceration--subject to his compliance with the district court's order to produce the responsive documents. The court stated that it did not "want to keep [Rinaldi] in jail one minute" and that Rinaldi would be released if he pro duced the documents or convinced the court that the documents no longer existed.

Rinaldi's appeal argued that he was found guilty of criminal contempt, not civil contempt, and was denied the appropriate criminal procedural safeguards. In the alternative, Rinaldi argued that even if he was found in civil contempt, (a) there was insufficient evidence to support such a finding; (b) the imprisonment and fine imposed have lost their coercive effect, and the contempt has therefore become criminal; (c) he may not be both fined and

imprisoned for civil contempt; and (d) the fine was excessive and arbitrary under the Eighth Amendment.

## II.   Analysis

### A.   Civil or Criminal Contempt

Rinaldi first asserted that the district court found him in criminal contempt, and thus that he was denied the appropriate procedural safeguards afforded a criminal defendant. We first determined that the district court found Rinaldi in civil contempt. We noted that we were not bound by the trial court's designation of whether the sanction was civil or criminal./2 See United States v. Lippitt, 180 F.3d 873, 877 n.6 (7th Cir. 1999). The test for determining whether a contempt order is civil or criminal is well-established. A contempt order is considered civil if the sanctions imposed are designed primarily to coerce the contemnor into complying with the court's demands, and criminal if its purpose is to punish the contemnor, vindicate the court's authority, or deter future misconduct. See id. at 876. As most sanctions contain both coercive and punitive elements, we examine the character of the relief itself. See id. at 877. If the contemnor retains the ability to purge the contempt and obtain his release by committing an affirmative act--and thereby "carries the keys of his prison in his own pocket," Gompers v. Bucks Stove & Range Co., 221 U.S. 418, 442, 31 S. Ct. 492, 55 L. Ed. 797 (1911)--the order is coercive, and therefore civil. See Lippitt, 180 F.3d at 877. Thus, "[t]he paradigmatic, coercive, civil contempt sanction . . . involves confining a contemnor indefinitely until he complies with an affirmative command such as an order to" produce documents or property. Id. (citation omitted). Conversely, prison terms of a definite, pre-determined length without the contemnor's ability to purge are generally considered punitive and therefore criminal contempt. See id.

In Lippitt, the contemnor failed to pay a fine imposed by the district court, and the court found the contemnor in contempt. See id. at 875. On appeal, the contemnor argued that the contempt was criminal and therefore implicated the Double Jeopardy Clause. See id. at 876.

In determining the nature of the district court's contempt order, we noted that the order did not set a definite term of imprisonment. See id. at 877. We stated that the term of imprisonment was indefinite because the order permitted the defendant to "purge" the contempt by complying with the order and paying the fine or by "making all reasonable efforts" to pay the fine. See id. We then held that because the contemnor retained the ability to purge his contempt by paying the fine, the contempt order was civil. See id.

In the present case, the district court found that the "records did exist" and that Rinaldi was not "going to furnish the records voluntarily, because [Rinaldi] d[id]n't think the Government ha[d] a right to them." Therefore, the district court wanted to coerce Rinaldi into involuntarily producing the responsive documents. Further, although the order stated that Rinaldi could be imprisoned for up to six months, the order specified that Rinaldi was "to be released . . . at any time, upon his furnishing the records called for by and to the U.S. Attorney's Office." (Emphasis added). Likewise, the fine was to be imposed only until Rinaldi "complie[d] with [the] grand jury subpoena." At the August 13, 2001 hearing, the district court stated that it did not "want to keep [Rinaldi] in jail one minute, and all [he had] to do to get out [was] tell [the court] what happened to those records." Therefore, Rinaldi's "key" to being released required him to either produce the documents or to convince the court that the documents no longer existed. As in Lippitt, the court did not order a set prison term, but rather allowed Rinaldi to be released if he complied with its order. Therefore, because Rinaldi retained the ability to "purge" the contempt, the court's order was a paradigmatic, coercive, civil sanction. See id. at 877.

B. Sufficiency of the Evidence

Rinaldi next contended that there was insufficient evidence to support the court's finding that he wilfully failed to comply with the court's order to produce the documents. Rinaldi asserted that the evidence failed to show that the documents still existed, and therefore he

could not be found in contempt for failing to produce them. When reviewing a contempt order, we will reverse the district court only for an abuse of discretion or if the court's decision is clearly erroneous. See In re John Doe Trader Number One, 894 F.2d 240, 242 (7th Cir. 1990). Keran testified that the sign-in sheets and appointment books were retained in a specific closet at Rinaldi's Springfield office from May 1994 until March or April 2001. Keran stated that after the service of the subpoena, these records were removed. Keran further testified that she advised Rinaldi that the sign-in sheets and appointment books were missing, and that Rinaldi replied that Keran should not worry about these records because he had taken care of them. She also testified that Rinaldi would "absolutely not" destroy the documents. Finally, Agent Staats testified that Rinaldi was observed placing a box of records containing sign-in sheets in a dumpster shortly prior to the arrival of federal agents.

Rinaldi attempted to counter this overwhelming evidence by stating that the district court should have believed his denial of the documents' existence and not the testimony of Keran. Rinaldi asserted that because he testified that he destroyed the documents before the service of the subpoena on January 23, 2001, there was insufficient evidence to support the district court's finding of contempt. However, "[w]here there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." United States v. Soto, 48 F.3d 1415, 1420 (7th Cir. 1995) (citation omitted). Moreover, the district court found Rinaldi to be completely incredible, and "[w]e give special deference to such credibility determinations, which can virtually never be clear error." United States v. Pedroza, 269 F.3d 821, 826 (7th Cir. 2001). Therefore, based on the testimony of Keran and Agent Staats, we concluded that the district court's order was supported by sufficient evidence.

C.  Continuing Effect of Order

Rinaldi next contended that the contempt order could no longer be coercive because at the time of his appellate argument, he

had been imprisoned and fined for more than two months. According to Rinaldi, even if the contempt order was a civil sanction on July 10, 2001, it had become punitive and criminal in nature. A civil contempt order that starts out as coercive can become punitive and therefore criminal. See In re Grand Jury Proceedings of December, 1989, 903 F.2d 1167, 1170 (7th Cir. 1990). For instance, a continued contempt order could lose its coercive force if there were simply no reasonable possibility that the contemnor would ever comply with the court's demands. See Lippitt, 180 F.3d at 877. However, "[i]n the absence of unusual circumstances, a reviewing court should be reluctant to conclude . . . that a civil contempt sanction has lost its coercive impact at some point prior to the eighteen-month period prescribed as a maximum by Congress [in 28 U.S.C. sec. 1826]. The district court's conclusion in this regard is virtually unreviewable." In re Grand Jury Proceedings of December, 1989, 903 F.2d at 1170 (quotations omitted); see also Lippitt, 180 F.3d at 878.

Rinaldi contended that it is "obvious" that his imprisonment had lost its coercive effect. However, Rinaldi offered no evidence in support of his bare assertion. Keran testified that Rinaldi "[a]bsolutely [would] not" destroy the documents and that Rinaldi removed the sign-in sheets and appointment books from the Springfield closet several months after being served with the subpoena. The district court relied on this testimony to conclude that it did not "believe [that Rinaldi was] ever going to furnish these records voluntarily," and thus the contempt order was necessary to coerce Rinaldi into complying with the June 15 order. Barely two months into Rinaldi's incarceration, we were unable to conclude that "unusual circumstances" existed that warranted a different conclusion.

Additionally, if Rinaldi was unable to pay the fine, additional fines would obviously have lost their effect because Rinaldi would no longer "carry the keys of his prison in his own pocket." However, Rinaldi failed to present any evidence that the imposition of the fine had lost its coercive effect, and therefore we also rejected this argument.

## D. Imprisonment and Fine

Rinaldi also asserted that he may not be both imprisoned and fined for civil contempt pursuant to United States v. Holloway, 991 F.2d 370, 373 (7th Cir. 1993). In Holloway, we held that a contemnor may not be both imprisoned and fined for criminal contempt. See id. at 374. However, in "contrast [with criminal contempt], a court may punish civil contempt by both a fine and imprisonment." Campbell v. Keystone Aerial Surveys, Inc., 138 F.3d 996, 1005 n.11 (5th Cir. 1998); see also In re Dinnan, 625 F.2d 1146, 1150 (5th Cir. 1980). Therefore, because the contempt order in this case was civil, Rinaldi's argument was rejected.

## E. Excessiveness of Fine

Finally, Rinaldi contended that the monetary fine imposed violated the Excessive Fines Clause of the Eighth Amendment. However, a fine assessed for civil contempt does not implicate the Excessive Fines Clause. See United States v. Mongelli, 2 F.3d 29, 30 (2d Cir. 1993).

## III. Conclusion

We therefore AFFIRMED the order of the district court.

FOOTNOTES

/1 In our order of September 19, 2001, we stated that an opinion explaining our reasoning would be forthcoming, and this is that opinion. This procedure is in accordance with 28 U.S.C. sec. 1826(b) and our practice, which requires that appeals of orders for civil contempt be decided within thirty days. See In re Grand Jury Proceedings of August, 1984, 757 F.2d 108, 110 (7th Cir. 1984), cert. denied, Ghibaudy v. United States, 471 U.S. 1018, 105 S. Ct. 2025, 85 L. Ed. 2d 306 (1985).

/2 The fact that the district court initially termed its order "Criminal Contempt" on July 10, 2001 was irrelevant. See Pabst Brewing Co. v. Brewery Local Union No. 77, 555 F.2d 146, 149 (7th Cir. 1977). "[W]hat the parties labeled the proceedings or how the court initially regarded defendant's conduct are not determinative of the character of the contempt sentence. Rather, we must discover the purpose of the contempt pro-

ceeding, whether it was to punish or coerce compliance." Id. (citation omitted). Moreover, the district court amended its order on July 19, 2001 and classified Rinaldi's contempt as civil.