In the

# United States Court of Appeals
## For the Seventh Circuit

No. 13-2214

CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS
HEALTH AND WELFARE FUND, and ARTHUR H. BUNTE,
JR., Trustee,

*Plaintiffs-Appellees*,

*v.*

BEVERLY LEWIS and DAVID T. LASHGARI,

*Defendants-Appellants*.

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 11 C 4845 — **Joan Humphrey Lefkow**, *Judge*.

ARGUED FEBRUARY 19, 2014 — DECIDED MARCH 12, 2014

Before POSNER, RIPPLE, and KANNE, *Circuit Judges*.

POSNER, *Circuit Judge*. The defendants appeal from an order of the district court holding them in contempt. Beverly Lewis was injured in an automobile accident in Georgia, and her health plan (the principal plaintiff in this case) paid $180,000 for the cost of her medical treatment (we round off all dollar figures to the nearest thousand). Represented by

the other defendant in the present suit, Georgia lawyer Da-vid T. Lashgari, Lewis brought a tort suit in Georgia state court against the driver of the car involved in the accident (her son-in-law), and obtained a $500,000 settlement. The plan had—and Lashgari knew it had—a subrogation lien: that is, a right, secured by a lien, to offset the cost that the plan had incurred as a result of the accident against any money that Lewis obtained in a suit arising out of the accident.

The lien was thus a secured claim against the proceeds of the settlement. But when Lashgari received the settlement proceeds in June 2011, instead of giving $180,000 of the $500,000 to the plan he split the proceeds between himself and his client. He claimed that the plan was owed nothing because the settlement had been intended solely to compensate Lewis for the driver's "post-accident tortious conduct" against her. That's nonsense; the settlement agreement states that it "encompass[es] all claims and demands whatsoever that were or could have been asserted … [for] damages, loss, or injury … which may be traced either directly or indirectly to the occurrences set forth in the aforesaid civil action [the personal injury suit arising from the accident] … no matter how remotely they may be related to the aforesaid occurrences." Even the check that Lashgari wrote to Lewis for her share of the proceeds says it's "for settlement of all 10/08/08 claims"—and October 8, 2008 was the date of the accident.

Lashgari's refusal to honor the subrogation lien precipitated the present suit, filed in July 2011, a suit under ERISA to enforce the lien. See 29 U.S.C. § 1132(a)(3). The defendants argued in the district court that because the settlement funds have been dissipated, this really is a suit for damages—that

is, a suit at law rather than in equity—and therefore not authorized by 29 U.S.C. § 1132(a)(3). But the defendants are wrong. The plan wasn't required to trace the settlement proceeds. Its equitable lien automatically gave rise to a constructive trust of the defendant's assets. *Sereboff v. Mid Atlantic Medical Services, Inc.*, 547 U.S. 356, 363–64 (2006); *Gutta v. Standard Select Trust Ins. Plans*, 530 F.3d 614, 621 (7th Cir. 2008); *Longaberger Co. v. Kolt*, 586 F.3d 459, 469 (6th Cir. 2009).

In February 2012 the plan moved the district court for entry of a preliminary injunction against the defendants' disposing of the settlement proceeds until the plan received its $180,000 share. The district judge granted the motion in May and also ordered the defendants to place at least $180,000 in Lashgari's client trust fund account pending final judgment in the case. The defendants complied with neither order. They said they couldn't pay $180,000, which if true would be at least a partial defense. *In re Resource Technology Corp.*, 624 F.3d 376, 387 (7th Cir. 2010). (It would not be a complete defense unless they couldn't pay any part of the $180,000.) A year later, with the defendants having neither placed any part of the $180,000 in a trust account as ordered nor produced any evidence of their inability to pay, the judge held them in civil contempt, ordered them to produce records that would establish their financial situations, and ordered Lashgari to submit a variety of documents relating to the contempt to the General Counsel of the State Bar of Georgia for possible disciplinary proceedings against him. The financial records that the defendants had submitted up to that point were, as we'll see, absurdly inadequate. We do not know whether the defendants have since produced detailed

records, or if Lashgari ever submitted anything to the State Bar of Georgia.

A finding of civil contempt of a judicial order is appealable, even when it is interlocutory as in this case, if but only if the underlying order is appealable. E.g., *Halderman v. Pennhurst State School & Hospital*, 673 F.2d 628, 635–36 (3d Cir. 1982) (en banc); Thomas J. André, Jr., "The Final Judgment Rule and Party Appeals of Civil Contempt Orders: Time for a Change," 55 *N.Y.U. L. Rev.* 1041, 1048 and n. 48 (1980). Otherwise a litigant could obtain appellate review of *any* interlocutory order, at will, by defying it. *Cleveland Hair Clinic, Inc. v. Puig*, 106 F.3d 165, 167 (7th Cir. 1997). The purpose of the contempt order in this case was to enforce the preliminary injunction, and a preliminary injunction is an appealable interlocutory order. 28 U.S.C. § 1292(a)(1). (The injunction was preliminary and therefore interlocutory because the suit remains pending in the district court, where the parties have filed cross motions for summary judgment.) And it was an injunction in fact and not just in name because, unlike a discovery order (which isn't appealable, *Mohawk Industries, Inc. v. Carpenter*, 558 U.S. 100, 107–09 (2009); *Aurora Bancshares Corp. v. Weston*, 777 F.2d 385, 386 (7th Cir. 1985) (per curiam); *International Products Corp. v. Koons*, 325 F.2d 403, 406–07 (2d Cir. 1963) (Friendly, J.)), it "g[a]ve or aid[ed] in giving some or all of the substantive relief sought by [the] complaint," *id.* at 406, by ordering the defendants to restore $180,000 to the settlement fund and place the entire fund in a trust account.

All this leaves unanswered *why* a finding of civil contempt should ever be appealable as an interlocutory order. We can't find a good answer, but a possible though incom-

plete one is that a prerequisite to certain interlocutory ap-
peals (such as appeals of preliminary injunctions)—
irreparable harm to the applicant for the injunction if it is
denied—often is applicable to orders of civil contempt. "Al-
though a court hearing an appeal from a final decision may
reverse a lower court's contempt ruling, it may not be able to
undo the injury already suffered by a contemnor," André,
*supra*, at 1084—although not in this case. The judge imposed
no fine or jail for noncompliance; other than ordering Lash-
gari to report himself to Georgia bar officials, the contempt
order did little more than vent the judge's anger at the de-
fendants' contumacious effrontery. Nevertheless the rule al-
lowing interlocutory appeal from an order of contempt of an
order itself eligible for interlocutory appeal is general and
confirms our jurisdiction.

So we come to the merits. The defendants' appeal brief is
a gaunt, pathetic document (there is no reply brief). Minus
formal matter, it is only eight and a half pages long. Brevity
is the soul of wit, and all that, but still: the first seven and a
half pages are simply a recitation of the history of the Geor-
gia lawsuit, the settlement negotiations, and the present suit,
along with questionable and irrelevant facts; and the tiny
argument section of the brief—118 words, including cita-
tions—states merely, without detail or elaboration, that the
defendants do not possess the settlement funds and there-
fore can't restore them. The only supporting evidence cited
(it is not discussed) is an affidavit by Lewis saying that she
and her husband had spent her entire share of the settlement
proceeds on a new house, a vehicle, and "repayment of per-
sonal loans, medical expenses, prescriptions, living ex-
penses, and other expenses"; a pair of affidavits by Lashgari
stating that neither he nor his law firm is "in possession of

funds that could be used to" restore $180,000 to a client trust account; and a bank statement dated June 2011 for a trust account maintained by Lashgari's law firm, Lashgari & Associates, P.C., www.lawyers4carwrecks.com (visited March 12, 2014). The bank statement shows the $500,000 deposit of the settlement proceeds and a subsequent withdrawal of $202,000, representing Lashgari's disbursement to Lewis of her share of the settlement. The share he retained—$298,000, a shade short of 60 percent of the settlement proceeds— seems too high for a contingent fee, but he argues that Lewis owed him for unspecified "advances" that he had made to her. The latest entry in the statement is for June 30, 2011— fewer than three weeks before this lawsuit was filed—and shows a balance of $341,000.

These documents—the only evidence cited in the defendants' brief—show that Lewis and Lashgari willfully ignored the plan's lien against the settlement proceeds. Lewis's statement does not indicate the value of her assets; even if she has spent every last cent of the settlement proceeds that she received, it doesn't follow that she's assetless— presumably she still has the vehicle and the house, and she has not indicated their value. And though her statement was not notarized until December 2012, it purports to state her financial situation as of May 2012; there is no subsequent information about her finances. As with Lewis, so with Lashgari: one of his affidavits states that the money in the trust account *from Lewis's settlement* has been spent, but there is no information about the account's current balance or the assets of his law firm.

The defendants may think that a mere assertion of inability to pay made in an affidavit (and thus under oath) pre-

cludes a finding of contempt. Not so. *United States v. Rylander*, 460 U.S. 752, 757–58 (1983); *United States ex rel. Thom v. Jenkins*, 760 F.2d 736, 739–40 (7th Cir. 1985); *Huber v. Marine Midland Bank*, 51 F.3d 5, 10–11 (2d Cir. 1995); *People v. Zimmer*, 87 N.E. 845, 847–48 (Ill. 1909). Few judgments would be paid were that the rule. It's true that if a sworn assertion of inability to pay is false the affiant can be prosecuted for perjury. But the likelihood of prosecution for perjury committed in a civil suit is slight. (It is slight in a criminal case as well, though if the defendant is convicted a finding that he perjured himself can be used to increase his sentence. U.S.S.G. § 3C1.1 and Application Note 4(B).) See Erin Murphy, "Manufacturing Crime: Process, Pretext, and Criminal Justice," 97 *Geo. L.J.* 1435, 1489–91 (2009); Jonathan Liebman & Joel Cohen, "Perjury and Civil Litigation," 20 *Litigation*, Summer 1994, at 43, 44–45.

The appeal is frivolous, and the plan asks us not only to dismiss it but also to award, as "just damages" authorized by Fed. R. App. P. 38, the attorneys' fees that the plan has incurred in defending against the appeal. The plan was represented by an in-house lawyer, but that doesn't defeat a claim for attorneys' fees. Rather, in such a case the amount awarded is based on the market price of those services in the law firm market. "Lawyers who devote their time to one case are unavailable for others, and in deciding whether it is prudent to pursue a given case a firm must decide whether the cost—including opportunities foregone in some other case, or the price of outside counsel to pursue that other case—is worthwhile. Opportunity cost, rather than cash outlay, is the right way to value legal services. The going rate for comparable legal services in the market reveals that cost directly, avoiding a complex inquiry that is in the end likely

to produce a comparable figure." *Central States, Southeast & Southwest Areas Pension Fund v. Central Cartage Co.*, 76 F.3d 114, 116 (7th Cir. 1996) (citations omitted); cf. *Board of Trustees of Hotel & Restaurant Employees Local 25 v. JPR, Inc.*, 136 F.3d 794, 804–05 (D.C. Cir. 1998); see also *Blum v. Stenson*, 465 U.S. 886, 893–95 (1984).

We are issuing an order to the defendants to show cause why they should not be sanctioned under Rule 38 for filing a frivolous appeal. Their response is due within 30 days from the date of this decision.

We close by registering our concern that the district court has allowed this suit to drag on for so long. Filed more than two and a half years ago, the case remains pending in the district court (where the parties have as we noted filed cross-motions for summary judgment that the district judge has not yet ruled on) even though the defendants have no colorable defenses. As soon as the defenses were pleaded—that the settlement was not of Lewis's personal injury claim arising from the accident, that the plan didn't have standing to sue under ERISA, and (another frivolous contention) that Lewis hadn't been properly served—the court should have smelled a rat. And the stench rose when the defendants ignored or defied discovery requests (causing the court to grant a motion to compel) and disobeyed orders to prepare for a settlement conference, thus forcing its cancellation; and when Lashgari's lawyer withdrew in June 2012 over "differences in material litigation strategy with" Lashgari and when Lewis's lawyers followed suit in September. The preliminary injunction was not issued until ten months after the suit had been filed and the contempt order not until a year after that. We don't understand why the judge waited until

the contempt hearing before ordering the turnover of documents, and why she didn't notify the General Counsel of the Georgia Bar of Lashgari's shenanigans herself rather than entrust the responsibility of doing so to the untrustworthy Lashgari. The sequence is so strange: to find the defendants in contempt, and only then order them to produce documentation confirming (or, improbably, refuting) their contemptuous behavior.

The defendants' conduct has been outrageous. After resolving the merits of the underlying suit, the district court should give serious consideration to transmitting copies of this opinion and the record to the Department of Justice and to the General Counsel of the Georgia Bar. In the meantime, we direct the district court to determine whether the defendants should be jailed (a standard remedy for civil contempt, see, e.g., *Turner v. Rogers*, 131 S. Ct. 2507, 2512–13 (2011); *In re Grand Jury Proceedings*, 280 F.3d 1103, 1107–08 (7th Cir. 2002)), until they comply with the order to deposit the settlement proceeds in a trust account.

Order to show cause issued, and appeal

DISMISSED.