In the

# United States Court of Appeals

## For the Seventh Circuit

No. 14-1124

UNITED STATES OF AMERICA,

*Plaintiff-Appellant*,

*v.*

PAUL DAVIS, JR., *et al.*,

*Defendants-Appellees.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 13 CR 63 — **John W. Darrah**, *Judge.*

ARGUED MAY 21, 2014 — DECIDED SEPTEMBER 8, 2014

Before BAUER, ROVNER, and HAMILTON, *Circuit Judges.*

ROVNER, *Circuit Judge.* This appeal arises from one of multiple criminal cases pending in the Northern District of Illinois in which the defendants are charged with conspiring to rob a non-existent "stash house" which, they were led to believe by an undercover agent, contained many kilograms of cocaine. At the request of the defendants, the district court ordered the government to produce nine categories of docu-

ments and data bearing on the exercise of the government's law enforcement and prosecutorial discretion with respect to criminal charges based on non-existent stash houses. After announcing its intent not to comply with the order, the government asked the district court to dismiss the indictment without prejudice in order to facilitate an immediate appeal of the order, and the district court granted the government's request. The government filed this appeal pursuant to 18 U.S.C. § 3731. We conclude that because the district court dismissed the indictment without prejudice, allowing the government to re-file the case regardless of the outcome of the appeal, the dismissal of the indictment is not a final order, and consequently we lack jurisdiction over the appeal.

## I.

We assume the truth of the following alleged facts, recognizing that the case has not been tried. A government informant made several purchases of crack cocaine and heroin from defendant Paul Davis, Jr. After Davis expressed an interest in robbery to the informant, the informant introduced him to an undercover special agent of the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") who was posing as a disgruntled drug courier for a Mexican cartel. The agent recruited Davis into a scheme to rob his employer's stash house, which he told Davis contained 50 kilograms of cocaine and was protected by armed guards. The stash house, of course, was a fiction. Davis recruited his six co-defendants into the scheme. When the day of the intended robbery arrived, the assembled crew (several of whom were armed with semi-automatic firearms) met the agent in a grocery store parking lot and then followed him in their cars to a warehouse in order to

make their final plans, including the means of overpowering the stash-house guards. At the conclusion of that planning session, which was covertly recorded, six of the seven defendants were arrested. (The seventh, who had become lost on the drive to the warehouse, was arrested later.) A grand jury indicted all seven defendants for conspiring and attempting to possess, with the intent to distribute, five or more kilograms of cocaine, in violation of 21 U.S.C. § 846; conspiring and attempting to affect interstate commerce by means of a robbery, in violation of 18 U.S.C. § 1951(a), and knowingly possessing a firearm in furtherance of a drug trafficking crime and a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A). Two of the defendants were additionally charged with being felons in possession of firearms, in violation of 18 U.S.C. § 922(g)(1).

The defendants filed a joint motion seeking discovery of information relevant to potential racial profiling and selective prosecution. All of the defendants named in this case are African-American, and because the principal offenses charged in this case arose from a sting orchestrated by the government, the defendants wished to explore the possibility that their race may have influenced the government's decision to recruit and charge them for the stash-house robbery. As a preliminary showing that discovery was warranted (*see United States v. Armstrong*, 517 U.S. 456, 470, 116 S. Ct. 1480, 1489 (1996) (to establish entitlement to discovery on selective prosecution, defendant must produce some credible evidence that similarly situated defendants of other races could have been prosecuted but were not)), the defendants gathered and presented data regarding some 25 stash-house sting cases that had been filed in the Northern District of Illinois from 2006 through the filing

of the instant prosecution in March 2013. By the defense account, 75 of the 97 defendants charged in those cases were African-American, 16 were Hispanic, and six were white. They noted further that of the 13 of those 25 cases instituted in the three years prior to the indictment of this case, 45 defendants were African-American, 14 were Hispanic, and just one was white. In sum, African Americans constituted 77 percent of all defendants charged in these cases, while comprising roughly 25 percent of the population of Cook County and a lesser percentage of the overall population of the Northern District of Illinois. Viewed another way, although white, non-Hispanic individuals comprise more than half of the population of the Northern District, only six percent of the defendants named in stash-house prosecutions filed from 2006 forward fall into that demographic group.

The district court found this showing sufficient to warrant the discovery the defendants had requested. "An examination of the limited information available to the Defendants indicates that since 2006, the prosecution in this District has brought at least twenty purported phony stash house cases, with the overwhelming majority of the defendants named being individuals of color. In light of this information, it is necessary to permit Defendants discovery … . " R. 124 at 2. The district court ordered the government to produce all of the information and documents that the defendants had requested, including:

> • a complete listing of stash-house cases initiated by the United States Attorney with the involvement of the ATF or the FBI in the Northern District of Illinois

from 2006 forward, along with disclosure of the race of each defendant charged in these cases;

• the factual basis for the decision to initiate or pursue an investigation against the defendants named in the cases identified by the defense;

• disclosure of any prior criminal contact between the defendants in each case and the agency responsible for investigating the case;

• internal ATF and FBI manuals, correspondence, and other documents addressing fictitious stash-house scenarios, including the protocols and directions to agents and informants with respect to such scenarios; and

• any documents addressing how supervisory personnel are to ensure that individuals in such scenarios are not targeted on the basis of race, color, ancestry, or national origin.

*Id.* at 2–3.

The government subsequently filed a "position paper" in which it indicated that it would not comply with the discovery order, and suggested that the court should dismiss the indictment without prejudice as a sanction for its noncompliance, thereby creating a final order that would be appealable to this court. R. 129. At a hearing on January 7, 2014, the district court granted the government's request to dismiss the indictment, confirming upon the prosecutor's inquiry that the dismissal was without prejudice. R. 132; R. 144 at 6.

This appeal followed.

**II.**

The first question in any appeal is our jurisdiction. *In re Morse Elec. Co.*, 805 F.2d 262, 264 (7th Cir. 1986). Section 3731 expressly authorizes the government to appeal from the dismissal of an indictment. Nonetheless, the defendants contend that because the district court dismissed the indictment without prejudice, and because the government has the ability to re-indict them regardless of whether we affirm or reverse the court's discovery order, the dismissal is not a final order subject to appellate review. The government, on the other hand, contends that it followed "established practice" in seeking dismissal of the indictment without prejudice as a means of facilitating appellate review. *See* Government Br. 12. We conclude that the defendants are correct: The dismissal of the indictment without prejudice is not a final order that the government may appeal pursuant to section 3731.

"The United States 'has no right of appeal in a criminal case absent explicit statutory authority.'" *United States v. Byerley*, 46 F.3d 694, 698 (7th Cir. 1995) (quoting *United States v. DiFrancesco*, 449 U.S. 117, 131, 101 S. Ct. 426, 434 (1980)), *abrogated on other grounds by United States v. Clark*, 538 F.3d 803, 810–11 (7th Cir. 2008); *see also Sanabria v. United States*, 437 U.S. 54, 67 n.21, 98 S. Ct. 2170, 2180 n.21 (1978) ("the Government is not authorized to appeal from all adverse rulings in criminal cases"). The source of authority for the government's appeal in this case is section 3731, which in full provides:

> In a criminal case, an appeal by the United States shall lie to a court of appeals from a decision, judgment, or order of a district court dismissing an

indictment or information or granting a new trial after verdict or judgment, as to any one or more counts, or any part thereof, except that no appeal shall lie where the double jeopardy clause of the United States Constitution prohibits further prosecution.

An appeal by the United States shall lie to a court of appeals from a decision or order of a district court suppressing or excluding evidence or requiring the return of seized property in a criminal proceeding, not made after the defendant has been put in jeopardy and before the verdict or finding on an indictment or information, if the United States attorney certifies to the district court that the appeal is not taken for purpose of delay and that the evidence is a substantial proof of a fact material in the proceeding.

An appeal by the United States shall lie to a court of appeals from a decision or order, entered by a district court of the United States, granting the release of a person charged with or convicted of an offense, or denying a motion for revocation of, or modification of the conditions of, a decision or order granting release.

The appeal in all such cases shall be taken within thirty days after the decision, judgment or order has been rendered and shall be diligently prosecuted.

The provisions of this section shall be liberally construed to effectuate its purposes.

We quote the statute in full because several of its provisions bear on our analysis; but plainly it is the first provision which relates directly to this appeal. Without question, the statute expressly authorizes the government to appeal from the dismissal of the indictment, and the indictment in this case indeed was dismissed.

The government is also assuredly correct in asserting that an indictment need not necessarily be dismissed with prejudice in order to be subject to appeal. The statute itself does not use the words "with prejudice" or equivalent phrasing, and as the Supreme Court has observed with respect to this very provision of the statute, "the form of the ruling is not dispositive of appealability in a statutory sense." *United States v. Martin Linen Supply Co.*, 430 U.S. 564, 567 n.4, 97 S. Ct. 1349, 1352 n.4 (1977). Indeed, we have found jurisdiction to entertain an appeal under this provision when the dismissal was without prejudice. *United States v. Clay*, 481 F.2d 133, 135–36 (7th Cir. 1973) (Stevens, J.).

What does matter apart from the label given to the dismissal is its finality. With limited exceptions, our appellate jurisdiction is limited to review of "final decisions" of the district court. 28 U.S.C. § 1291; *see United States v. Rodriguez*, 975 F.2d 404, 408 (7th Cir. 1992). Interlocutory appeals are as disfavored in the criminal context as they are in the civil—even more so, actually. *See United States v. Van Engel*, 15 F.3d 623, 628–29 (7th Cir. 1993), *abrogated on other grounds by United States v. Sowa*, 34 F.3d 447, 450–52 (7th Cir. 1994); *United States v.*

*Celani*, 748 F.2d 363, 364–65 (7th Cir. 1984). Notably, there is no provision in the criminal context akin to 28 U.S.C. § 1292(b) authorizing the district court in civil cases to certify for appeal interlocutory decisions that would otherwise not be appealable as final orders. *See United States v. White*, 743 F.2d 488, 493 (7th Cir. 1984); *see also United States v. Guerrero*, 693 F.3d 990, 998 (9th Cir. 2012); *United States v. Blackwell*, 900 F.2d 742, 746 (4th Cir. 1990). Section 3731 does authorize the government to appeal from certain categories of orders that are decidedly non-final, including, in particular, orders suppressing or excluding evidence (and orders directing the government to return seized evidence). Such provisions stand as limited exceptions to the rule that a decision must be final in order to be appealable. *See Flanagan v. United States*, 465 U.S. 259, 265 n.3, 104 S. Ct. 1051, 1055 n.3 (1984); *Rodriguez*, 975 F.2d at 408; *White*, 743 F.2d at 493; *see also United States v. Chaudhry*, 630 F.3d 875, 878 (9th Cir. 2011).

As the Supreme Court recognized in *Flanagan*, "[t]he final judgment rule serves several important interests." 465 U.S. at 263, 104 S. Ct. at 1054.

> It helps preserve the respect due trial judges by minimizing appellate-court interference with the numerous decisions they must make in the pre-judgment stages of litigation. It reduces the ability of litigants to harass opponents and to clog the courts through a succession of costly and time-consuming appeals. It is crucial to the efficient administration of justice. *Firestone Tire & Rubber Co. v. Risjord*, … 449 U.S. [368], at 374, 101 S. Ct. [669], at 673 [(1981)]. For

> these reasons, "[t]his Court has long held that the
> policy of Congress embedded in [section 1291] is
> inimical to piecemeal appellate review of trial court
> decisions which do not terminate the ligation. …"
> *United States v. Hollywood Motor Car Co.*, 458 U.S. 263,
> 265, 102 S. Ct. 3081, 3083 (1982).

465 U.S. at 263–64, 104 S. Ct. at 1054. The Court went on to
recognize that the policy against piecemeal appeals "is at its
strongest in the field of criminal law." *Id.* at 264, 104 S. Ct. at
1054 (quoting *Hollywood Motor Car Co.*). The Court observed
that the defendant has a right to a speedy trial; the government
has an interest in avoiding delays which make it more difficult
to meet its burden of proof; and the community has a strong
interest in swiftly bringing perpetrators of crime to justice. *Id.*
at 264–65, 104 S. Ct. at 1054.

The finality of a dismissal order takes on particular impor-
tance when the dismissal order serves as a gateway to the
review of other orders that would not, standing alone, be
subject to appeal. An indictment can be dismissed for the
classic reason that it fails (in the district court's view) to state
a federal offense. *See, e.g., United States v. Freed*, 401 U.S. 601, 91
S. Ct. 1112 (1971). But a court may also order that the indict-
ment be dismissed (on its own motion or at the request of the
defendant), not for any perceived flaw in the pleading of the
crime, but as a sanction for some fault in the government's
prosecution of the case. *See, e.g., Zedner v. United States*,
547 U.S. 489, 499, 126 S. Ct. 1976, 1984–85 (2006) (violation of
the Speedy Trial Act); *United States v. Kerley*, 787 F.2d 1147,
1148 (7th Cir. 1986) (per curiam) (failure to comply with

discovery order). And, as was the case here, the government itself may ask the district court to dismiss the indictment for the express purpose of facilitating appellate review of an otherwise unappealable, interlocutory order by terminating the proceedings in the district court. *See*, *e.g.*, *United States v. Deberry*, 430 F.3d 1294, 1301–02 (10th Cir. 2005).

We have no doubt that inviting dismissal of the indictment is a legitimate way for the government to establish jurisdiction for an appeal pursuant to section 3731. The government did the equivalent of that in *United States v. Procter & Gamble Co.*, 356 U.S. 677, 681, 78 S. Ct. 983, 985 (1958), a civil case, by inviting the dismissal of its complaint as a means of obtaining "expeditious review" of a discovery order pertaining to grand jury transcripts that the government adamantly opposed. The Court flatly rejected the defendants' contention that because the government had asked for the dismissal, it could not then appeal the dismissal order. *Id.* at 680–81, 78 S. Ct. at 985–86. The Court acknowledged that the government could have chosen to follow the more conventional path of subjecting its counsel to a contempt citation as a means of obtaining appellate review of the contested discovery order, but concluded that soliciting the dismissal of its own complaint was an equally effective means of securing an appealable order which also had the advantage of avoiding an "unseemly conflict" with the district court. *Id.* at 680, 78 S. Ct. at 985. Although *Procter & Gamble* was a civil case, the same tactic has been used in criminal litigation, *e.g.*, *Deberry*, 430 F.3d at 1301–02, and we have no reason to believe that the Supreme Court would disapprove the practice. *See Armstrong*, 517 U.S. at 461 n.2, 116 S. Ct. at 1484 n.2 (without addressing finality or jurisdiction,

Court notes that, in order to facilitate appeal of contested discovery order, "it was the government itself that suggested dismissal of the indictments so that an appeal might lie") (quoting *United States v. Armstrong*, 48 F.3d 1508, 1510) (9th Cir. 1995) (en banc)).

Our concern, rather, is that unless the dismissal solicited by the government is genuinely final, invited dismissal will essentially permit any number of interlocutory appeals that section 3731 does not otherwise authorize. *Cf. Central States, Se. & Sw. Areas Health & Welfare Fund v. Lewis*, 745 F.3d 283, 286 (7th Cir. 2014) (noting that adjudication of civil contempt for failure to obey judicial order is appealable only if the underlying order itself is appealable; "[o]therwise a litigant could obtain appellate review of *any* interlocutory order, at will, by defying it") (emphasis in original) (citing *Cleveland Hair Clinic, Inc. v. Puig*, 106 F.3d 165, 167 (7th Cir. 1997)). *Flanagan* recognizes that "minimizing appellate-court interference with the numerous decisions [district courts] must make in the pre-judgment stages of litigation" is a key reason underlying the final-judgment rule. 465 U.S. at 263–64, 104 S. Ct. at 1054. Discovery orders are a prime example of pretrial decisions that are entrusted to the district court's ample discretion in the first instance and that are ordinarily not subject to review, if at all, until a final judgment in the case has been rendered. *See Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 107–09, 130 S. Ct. 599, 605–07 (2009) (discovery order is not a collateral order appealable under *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 69 S. Ct. 1221 (1949)); *Lewis*, 745 F.3d at 286 (discovery order is not appealable) (collecting cases); *In re. Pet'n of Boehringer Ingelheim Pharms., Inc.*, 745 F.3d 216, 219 (7th Cir.

2014) (mandamus provides safety valve enabling interlocutory review of discovery orders in exceptional cases).

The concern for genuine finality explains why both the Supreme Court and this court, in decisions expressly addressing the appealability of an order dismissing an indictment for reasons not having to do with the sufficiency of the indictment itself, have emphasized that such an order is appealable when the government lacks the ability to cure the problem that triggered the dismissal. *See United States v. Marion*, 404 U.S. 307, 312, 92 S. Ct. 455, 459 (1971); *Clay*, 481 F.2d at 135–36. In that scenario, even if the dismissal is without prejudice, the litigation has been brought to a definitive close and therefore the judgment is indeed final.

In *Marion*, the district court had dismissed an indictment based on a delay of three years between the commission of the crimes charged and the indictment for those offenses. The version of section 3731 at issue in *Marion* permitted an appeal directly to the Supreme Court in any case in which the trial court had sustained "a motion in bar, when the defendant has not yet been put in jeopardy." 404 U.S. at 311–12, 92 S. Ct. at 459 (quoting 18 U.S.C. § 3731 (1964)). In considering its jurisdiction to entertain the appeal, the Court ticked off the various circumstances confirming that the defendants had not yet been placed in jeopardy and that the order of dismissal was appealable under the statute. *Id.* at 312, 92 S. Ct. at 459. Among those was this observation relating to the finality of the dismissal order: "The trial judge based his ruling on undue delay prior to indictment, a matter that was beyond the power

of the government to cure since re-indictment would not have been permissible under such a ruling" *Ibid.*

Our decision in *Clay* in turn relied on *Marion*—and its observation about the government's inability to cure the reason for the dismissal—as a justification for treating the dismissal of an indictment without prejudice as an appealable order under the current version of section 3731's first paragraph. The district court in *Clay* had dismissed an indictment based on what it perceived to have been unnecessary pre-indictment delay, prompting a government appeal. Then-Judge Stevens, writing for the court, began by noting that "[a]lthough the trial judge may have intended to dismiss the indictment with prejudice, such a result would have been unwarranted." 481 F.2d at 135 (footnote omitted). He proceeded to articulate why the dismissal was properly understood as being without prejudice. *Id.* With that point resolved, Judge Stevens turned to the question of finality, explaining why "[o]ur construction of the order does not foreclose appealability." *Id.* After highlighting the passage from *Marion* that we have just quoted regarding the government's inability to rectify the defect that had produced the dismissal, he elaborated on the reasons why the dismissal in *Clay* likewise was, in practical terms, final and therefore subject to appeal under section 3731:

> In this case, if the district court's ruling [on preindictment delay] were correct, re-indictment would not have been permissible. After the entry of the order of dismissal, it was obviously too late to shorten the preindictment delay that had already occurred. Moreover the issue of necessity had been

> determined adversely to the government. Therefore, even if the dismissal was technically without prejudice, as a practical matter, assuming the correctness of that order, there was no possibility of another indictment that would withstand an identical motion to dismiss.

*Id.* 136. Judge Stevens' analysis in *Clay* leaves no doubt that the government's inability to address and correct the problem that had led to dismissal of the indictment was crucial to our finding that the dismissal was appealable, notwithstanding that the dismissal was made without prejudice. *See also United States v. Correia*, 531 F.2d 1095, 1097 (1st Cir. 1976) (expressing doubt as to appellate jurisdiction in light of *Marion* and *Clay*, noting "a lack of finality" when there is "no barrier to the government's reindicting defendant"; court went on to assume without deciding that it had jurisdiction and address merits of the appeal); *cf. Anderson v. Catholic Bishop of Chicago*, No. 13-1803, — F.3d —, 2014 2959129, at *3 (7th Cir. Jul. 2, 2014) (dismissals without prejudice based on problems that readily can be fixed typically are not final, appealable orders unless the statute of limitations would preclude refiling).

Here, by contrast, the government could rectify the problem that culminated in the dismissal of the indictment. Although the government's decision to request dismissal of the indictment has ended—for now—the proceedings in the district court, the fact that the dismissal was without prejudice leaves the door open to reindictment. Obviously, if we were to reach the merits of the appeal and reverse both the dismissal and the underlying discovery order that prompted it, that step would be unnecessary. But even if we affirmed the discovery

order as a reasonable exercise of the district court's discretion, and in turn sustained the dismissal, nothing other than the statute of limitations would prevent the government from reindicting the defendants and complying with the discovery order. The government's belated compliance with the mandated discovery would cure the problem that led to dismissal in the first instance. And it is not unreasonable to suppose that the government might choose to follow that path in the event of affirmance.[1] Discovery along the lines that the district court ordered in this case has been ordered in certain other pending stash-house cases in the Northern District of Illinois, and the defendants have represented without contradiction in the briefs that the government is cooperating with discovery in those cases.

In short, *Clay*'s rationale suggests in strong terms that the dismissal of the indictment in this case is not final and appealable. As we have said, in this case the government retains the ability to reindict the defendants and to redress the reason for dismissal; and by asking that the dismissal be entered without prejudice, the government has preserved its ability to do so. By contrast, had the dismissal been granted with prejudice, there would be nothing that the government could do to reinstate the prosecution assuming that the discovery order that it resisted was an appropriate exercise of the district court's discretion; as in *Clay*, only if we deemed the order triggering

---

[1] When asked at argument, the government confirmed that it would not necessarily dismiss the other stash-house cases pending in the Northern District of Illinois in which selective-prosecution discovery has been ordered if we were to affirm the district court's discovery order in this case.

dismissal (the discovery order) to be an abuse of discretion and reversed would the government be free to resume the prosecution of the defendants. *See, e.g.*, *United States v. Jackson*, 508 F.2d 1001, 1005–06 & n.3 (7th Cir. 1975), *aff'g in part & rev'g in part* 374 F. Supp. 168 (N.D. Ill. 1974) (reviewing dismissal of indictment with prejudice based in part on government's refusal to comply with order requiring it to produce witness list in advance of trial); *United States v. Richter*, 488 F.2d 170, 172–73 (9th Cir. 1973) (reviewing dismissal of indictment with prejudice based on government's refusal to comply with discovery order). But, again, the district court dismissed the indictment *without* prejudice at the government's specific request, leaving the door open to reindictment and compliance with the discovery order at the government's option.

True enough, as the government points out, there are a number of cases which have entertained appeals from dismissal orders that were not final in the sense that we have been discussing. These cases either do not address the subject of jurisdiction at all, or they consider and find appellate jurisdiction based on circumstances that can be reconciled with (or at least distinguished from) our decision in *Clay*, even if their reasoning may not be.

*Armstrong*, because it is a Supreme Court decision, is the most prominent of these cases. As in this case, the underlying merits issue in *Armstrong* had to do with the preliminary showing that a defendant must make in order to justify discovery from the government on the question of selective prosecution. The district court in *Armstrong* had found that discovery on the issue was warranted; as here, the government

had indicated that it would not comply with the discovery order, prompting the court to dismiss the case, evidently without prejudice, at the government's suggestion. The Ninth Circuit reached the merits of the government's appeal, as did the Supreme Court; but neither court discussed the finality of the district court's order as it bore on appellate jurisdiction. *See* 517 U.S. at 461 n.2, 116 S. Ct. at 1484 n.2 (simply quoting the Ninth Circuit's recitation that "it was the government itself that suggested dismissal of the indictments to the district court so that an appeal might lie"). Indeed, the issue was not addressed at all in the parties' Supreme Court briefs. Overlooked jurisdictional questions are by no means unheard of, and as the defendants correctly point out, the Supreme Court itself has repeatedly admonished that "the existence of unaddressed jurisdictional defects has no precedential effect." *Lewis v. Casey*, 518 U.S. 343, 352 n.2, 116 S. Ct. 2174, 2180 n.2 (1996) (collecting cases). Thus, *Armstrong* supplies neither precedent nor guidance on the subject of appellate jurisdiction. The decisions of our sister circuits in *United States v. Hastings*, 126 F.3d 310, 313, 316–17 (4th Cir. 1997), *United States v. Turner*, 104 F.3d 1180, 1184 (9th Cir. 1997), *United States v. Olvis*, 97 F.3d 739, 743 (4th Cir. 1996), *United States v. Hamilton*, 46 F.3d 271, 274 (3d Cir. 1995), and *United States v. DiBernardo*, 775 F.2d 1470, 1474 n.8 (11th Cir. 1985), which likewise involve dismissals without prejudice but engage in no meaningful analysis of finality vis-à-vis the jurisdictional issue, fall into the same category. The same may be said of this court's decision in *Kerley*, 787 F.2d at 1148, which summarily noted jurisdiction under section 3731 without citing or discussing *Clay* or the finality of the dismissal order that was appealed.

On the other hand, two of the cases relied on by the government do broach the issue and find jurisdiction over dismissals without prejudice. Their broad, unqualified language regarding section 3731 and appellate review of dismissals without prejudice is difficult to reconcile with *Clay*. But the circumstances underlying the dismissals in those cases can, nonetheless, be harmonized with *Clay*'s reasoning to some extent.

In *United States v. Lester*, 992 F.2d 174 (8th Cir. 1993), the district court dismissed the indictment without prejudice based on a problem that could not be corrected by the government. The defendant was charged in federal court with aggravated sexual abuse after he had already been tried and convicted in tribal court of rape and simple assault based on the same underlying facts. The district court viewed the later, federal charge as a violation of the government's internal *Petite* policy against charging an individual previously prosecuted by another sovereign for the same offense conduct (*see Petite v. United States*, 361 U.S. 529, 80 S. Ct. 450 (1960)) and dismissed the indictment on that basis. The Eighth Circuit rejected the defendant's contention that because the dismissal was without prejudice to reindictment, the dismissal order was not final and appealable. The Court noted first and principally that section 3731 "gives the government the right to appeal the district court's dismissal of an indictment and does not distinguish between dismissal with prejudice or without prejudice." 992 F.2d at 176. That passage could be read to suggest that both forms of dismissal are always subject to appeal by the government. But what is unnoted by the *Lester* decision is that although the dismissal without prejudice technically reserved

to the government the ability to charge the defendant a second time, reindictment could not solve the *Petite* problem which had led to dismissal in the first instance. On the facts, then, *Lester* is wholly consistent with our decision in *Clay*.

The Ninth Circuit's decision in *United States v. Woodruff*, 50 F.3d 673 (9th Cir. 1995), is not so easily reconciled with *Clay*; nonetheless, there are important distinctions between the two cases. The district court in that case dismissed an indictment charging the defendant with a violation of the Hobbs Act, 18 U.S.C. § 1951(a), finding that the government had not alleged how, specifically, the defendant's actions had affected interstate commerce. Because the dismissal was without prejudice, the defendant argued that the dismissal was non-final and therefore not subject to appeal. The appellate court was not persuaded. As in *Lester*, the Ninth Circuit relied on the fact that section 3731 makes no distinction between dismissals with or without prejudice. 50 F.3d at 675. The court also emphasized the statute's concluding language calling for a liberal construction of its terms to effectuate its purposes (which *Lester* likewise noted). *Id. Woodruff*'s reasoning too is thus inconsistent with our own more cautious approach in *Clay*. But two points are worth making about *Woodruff*. First, the dismissal in *Woodruff* was based on the perceived insufficiency of the indictment. Often such defects are not correctable as a practical matter because what was pleaded in the first instance reflects what evidence the government has or what facts it believes are sufficient to constitute an offense. Of course, this was not true in *Woodruff*: the government could have obtained a superseding indictment which expressly articulated its theory as to the effect on interstate commerce. To

that extent, the dismissal of the indictment would arguably not qualify as final under *Clay*'s reasoning. Second, because the dismissal at issue in *Woodruff* was the prototypical dismissal of the indictment—that is, a dismissal having to do with the adequacy of the indictment itself—the dismissal was not being used as the gateway to appellate review of another order which, standing alone, was interlocutory and unappealable. There was therefore no need to consider the ramifications of treating a dismissal without prejudice as invariably appealable, regardless of whether the government has the power to reindict and correct the underlying problem that led to the dismissal.

In sum, none of these cases persuades us that we should abandon our analysis in *Clay*. As we have said, we are particularly concerned that allowing appeals from invited dismissals without prejudice would grant to the government a right to appeal interlocutory orders that section 3731 otherwise does not authorize except as to orders suppressing or excluding evidence. Our decision in *Reise v. Bd. of Regents of Univ. of Wis. Sys.*, 957 F.2d 293, 295–96 (7th Cir. 1992), sets out all of the reasons why a district court's discovery orders ordinarily are not and should not be subject to interlocutory review; those reasons are as pertinent in the criminal context as they are in the civil. *See*, *e.g.*, *United States v. Butler*, 316 F. App'x 503, 504–05 (7th Cir. 2009) (nonprecedential decision). Inviting dismissal of the indictment *with* prejudice, and thus surrendering the ability to reindict the defendants, would make clear that the government views the disputed discovery order (or other interlocutory order) as dispositive of the case; appellate review would therefore be confined to a truly final order. *Cf.*

*John's Insulation, Inc. v. L. Addison & Assocs.*, 156 F.3d 101, 107
(1st Cir. 1998) (correct way for plaintiff in civil litigation to
create final judgment permitting review of interlocutory order
is to voluntarily dismiss complaint with prejudice). Inviting
dismissal *without* prejudice, on the other hand, presents the
problem that we noted in *Lewis*: appellate review of a wide
range of interlocutory orders not otherwise authorized by
statute. 745 F.3d at 286. To the extent that the government, in
contrast to the defendant, lacks the practical ability to chal-
lenge discovery and other interlocutory orders at the close of
the case, we note that mandamus also remains available as a
means of obtaining review of such orders in exceptional cases.

The government has suggested that, notwithstanding its
ability to reindict the defendants, the burdens of doing so and
the need to convince a grand jury to reindict should serve as a
sufficient check on its ability to obtain appellate review by
dismissing an indictment without prejudice. We do not doubt
that there are some costs and risks associated with the path the
government has followed here (*see United States v. Taylor*,
487 U.S. 326, 342, 108 S. Ct. 2413, 2422 (1988) (noting that
"[d]ismissal without prejudice is not a toothless sanction")),
although it seems safe to say that the likelihood of a grand jury
reindicting the defendants is high and the difficulty of present-
ing the case a second time to the grand jury is minimal, given
that the government's own undercover agent was a witness to
most of the key events in the charged conspiracy. Ultimately,
however, our concern is less with the possibility that the
government might abuse its ability to obtain appellate review
by dismissing an indictment without prejudice than it is with
the fact that the statute confines interlocutory review to one

category of orders that conspicuously does not include discovery orders. As in *Clay*, when the government lacks the practical ability to remedy the problem that led to the dismissal of an indictment without prejudice, it is appropriate to treat the dismissal as final and appealable. But we are unwilling to read into section 3731 a right to invite dismissal without prejudice and appeal any number of pretrial orders when the government retains the ability to reindict the defendant and avoid dismissal by belatedly complying with the order, even if it loses the appeal.

Finally, we have not forgotten that section 3731 mandates a liberal construction of its terms to effectuate the purposes of the statute. Certainly that admonition counsels against standing on technicalities when it is clear that the appealed order is of a type that Congress meant for the government to be able to appeal. For example, although dismissal of an indictment based on a defect in pleading may be the classic form of dismissal and the one that comes first to mind, there is no reason to think that Congress meant to preclude review of dismissals ordered for other reasons. *See Richter*, *supra*, 488 F.2d at 172–73. And because Congress has expressly authorized appeals from orders suppressing or excluding evidence, an order that threatens the suppression of evidence if the government does not comply with a particular directive will be appealable when the facts make sufficiently clear the government's intention not to comply, even if it has not formally announced that intent. *See United States v. Parks*, 100 F.3d 1300, 1303–05 (7th Cir. 1996). But section 3731 speaks of effectuating its purposes, and it is not a stated purpose of the statute to permit review of interlocutory orders not otherwise identified

as appealable by the statutory text. Section 3731 makes only limited categories of interlocutory orders—including those suppressing or excluding evidence—appealable. Other interlocutory orders may be made reviewable when the court dismisses the indictment under circumstances making clear that the government lacks the ability to re-prosecute the defendant without facing dismissal for the same reasons a second time—when the dismissal is final, in other words. *E.g.*, *Clay*, 481 F.2d at 136. But we are convinced that it is contrary to the purposes of section 3731 to allow the government to use dismissal without prejudice as a means of obtaining review of an interlocutory order that the government could, in the event of affirmance, choose to comply with later upon reindictment of the defendant. Appealing such an order while retaining the ability to re-indict and comply with the order would transform a "narrow statutory grant" of appellate jurisdiction (*DiBernardo*, *supra*, 775 F.2d at 1474 n.8) into one far broader than section 3731's express terms. *See United States v. Spilotro*, 884 F.2d 1003, 1005–06 (7th Cir. 1989) (noting that section 3731's liberal-construction provision does not permit appeals from orders not identified in the statutory text).

### III.

Because the dismissal of the indictment without prejudice was not a final order under the circumstances of this case, we lack jurisdiction over the government's appeal. The appeal is therefore DISMISSED.