OHIO ELECTIONS COMMISSION, Appellee,

v.

OHIO CHAMBER OF COMMERCE AND CITIZENS
FOR A STRONG OHIO, Appellants.

Ohio Elections Commission, Appellee; Alliance for Democracy, Appellant,

v.

Citizens for a Strong Ohio et al., Appellees.

[Cite as *Ohio Elections Comm. v. Ohio Chamber of Commerce & Citizens for a Strong Ohio,* 158 Ohio App.3d 557, 2004-Ohio-5253.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

Nos. 03AP–1121 and 03AP–1137.

Decided Sept. 30, 2004.

558

Jim Petro, Attorney General, and Sharon A. Jennings, for appellee Ohio Elections Commission.

Clifford O. Arnebeck Jr., Edward B. Foley, and David Goldberger, for appellant Alliance for Democracy.

Squire, Sanders & Dempsey, L.L.P., and William M. Todd, for appellants and appellees Citizens for a Strong Ohio and the Ohio Chamber of Commerce.

WATSON, Judge.

{¶ 1} Citizens for a Strong Ohio ("CSO") and the Ohio Chamber of Commerce ("Ohio Chamber") appeal from the decision of the Franklin County Court of Common Pleas enforcing two subpoenas issued by the Ohio Elections Commission during proceedings before it.[1] Alliance for Democracy ("Alliance") also appeals from the trial court's decision denying its motion to intervene.[2] For the following reasons, we affirm.

{¶ 2} The case arose from a series of advertisements run by the Ohio Chamber and CSO during the 2000 campaign for election of Supreme Court of Ohio justices. Relators filed three separate complaints with the commission concerning four of these ads. The complaint at issue in this appeal alleges violations of R.C. 3517.105, 3517.20, 3517.21(B)(9) and (10), 3517.10(D)(1), and 3599.03(A) and (B).

---

1. CSO and the Chamber's appeal is case No. 03AP–1121.

2. The case number for Alliance's appeal is case No. 03AP–1137.

{¶ 3} Based on this court's remand in *Common Cause v. Ohio Elections Comm.*, 150 Ohio App.3d 31, 2002-Ohio-5965, 779 N.E.2d 766 (*"Common Cause I"*), regarding two of the originally filed complaints, including the complaint at issue, the commission decided to proceed with further hearings on the complaints. One of the complaints involving corporate respondent U.S. Chamber of Commerce was submitted to the commission based on stipulated facts.[3]

{¶ 4} The commission also proceeded on the complaint at issue, resulting in this subpoena-enforcement action. The complaint alleged that CSO and the Ohio Chamber had violated Ohio election law by airing an ad entitled "Is Justice For Sale?" Alliance, CSO, and the Ohio Chamber filed motions for *partial* summary judgment. The commission granted Alliance's motion on the grounds that the ads violated R.C. 3599.03. The commission determined that the U.S. Chamber violated R.C. 3599.03 by paying for the ads with general corporate funds. Specifically, the commission found the ads expressly advocate for or against a candidate and were made for or in aid of or in opposition to a candidate for election to public office as provided in R.C. 3599.03. The commission concluded that "magic words" were not necessary to establish a violation, in accordance with this court's opinion in *Common Cause I.* The commission denied CSO's and the Ohio Chamber's motion for partial summary judgment.

{¶ 5} Alliance has been engaged in discovery regarding the claims since the remand from this court in *Common Cause I.* The discovery propounded included a request for production of the list of names of contributors to CSO, the date of the contributions, and the amounts of the contributions. CSO and the Ohio Chamber still refused to produce the list. Thereafter, the commission issued two subpoenas, one to CSO and one to the Ohio Chamber. CSO and the Ohio Chamber failed to produce the list. The commission filed an application to enforce the subpoenas in the trial court pursuant to R.C. 3517.153(B).[4] The trial court ordered the list produced by November 17, 2003. If they failed to produce the list CSO and the Chamber would be subject to a fine of $25,000 per day. CSO and the Ohio Chamber subsequently filed this appeal. CSO and the Ohio Chamber ("appellants") assert the following assignments of error:

1. The Common Pleas Court erred in granting the [commission's] application for enforcement of subpoenas *duces tecum,* because the Commission did not have the jurisdiction or legal authority to issue the subpoenas involved in this case.

---

3. The U.S. Chamber is not a party to this appeal.

4. R.C. 3517.153(B) allows the commission to apply to the Franklin County Court of Common Pleas upon the refusal of any person to obey a subpoena.

2. The Common Pleas Court erred in determining without an evidentiary hearing, that the information requested in the subpoenas was relevant to any of the issues pending before the Commission.

3. The Common Pleas Court erred in determining the subpoenas were not burdensome or oppressive, because compliance requires the violation of third party rights guaranteed under the First Amendment to the U.S. Constitution.

4. The Common Pleas Court erred in not placing the burden on the Commission to demonstrate that compliance with the subpoenas was appropriate because the Common Pleas Court failed to apply the correct standard of review.

5. The Common Pleas Court erred in ordering excessive and disproportionate fines as an alternative to noncompliance in violation of the Eighth Amendment to the U.S. Constitution.

{¶ 6} Alliance brings the following sole assignment of error:

The trial court erred in denying the motion of a party to the underlying litigation to intervene in a Revised Code § 2705.03 subpoena enforcement proceeding on the ground that this was a summary statutory proceeding, because there is no basis upon which Civ.R. 24 is by its nature "clearly inapplicable" to such a proceeding, as is required for the Civ.R. 1(C)(7) exception to apply.

{¶ 7} The current allegations deal with various requirements for political action committees ("PACs"), with the exception of R.C. 3517.21(B)(9) and (10). A PAC is defined as a "combination of two or more persons, the primary or incidental purpose of which is to support or oppose any candidate, political party, or issue, or to influence the result of any election." R.C. 3517.01(B)(8). If CSO constitutes a PAC, it is required to disclose the names of contributors. The issue whether CSO constitutes a PAC is currently before the commission.

█ {¶ 8} In their first assignment of error, appellants maintain that the commission does not have the authority or jurisdiction to issue the subpoenas that are the subject of this appeal. Appellants argue that the commission is not permitted to enforce Ohio's election laws against them, because they engaged in constitutionally protected issue advocacy. Appellants contend that their particular form of speech and association is protected by the First Amendment because they never expressly advocated the election or defeat of a candidate. Therefore, any enforcement would violate the standards set forth in *Buckley v. Valeo* (1976), 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659. This assignment of error is without merit.

{¶ 9} The commission has the authority under Ohio law to investigate complaints filed with it. R.C. 3517.153(A) provides that upon the filing of a complaint

that sets forth a violation of R.C. 3517.08 to 3517.13, 3517.17, 3517.18, 3517.20, 3517.22, 3599.03, or 3599.031, "the commission *shall* proceed in accordance with sections 3517.154 to 3517.157 of the Revised Code." (Emphasis added.) Further, R.C. 3517.21(C) provides, "Before a prosecution may commence under this section, a complaint shall be filed with the Ohio elections commission under section 3517.153 of the Revised Code." Alliance alleges violations of several of these statutes.[5] Therefore, the commission must initially proceed with the complaints.

{¶ 10} "Discussion of public issues and debate on the qualifications of candidates are integral to the operation of the system of government established by our Constitution." *Buckley*, supra, 424 U.S. at 14, 96 S.Ct. 612, 46 L.Ed.2d 659. The First Amendment affords the broadest protection to this type of political expression in order to ensure unfettered dialogue of ideas to bring about political and social changes desired by the people. Id. A major purpose of the First Amendment is to protect the free discussion of government, including discussion of candidates for office. Id. It protects political association as well as political expression. Id. "Privacy is particularly important where the group's cause is unpopular; once the participants lose their anonymity, intimidation and suppression may follow." *Internatl. Action Ctr. v. United States* (D.D.C.2002), 207 F.R.D. 1, 3 (First Amendment precluded defendant government from obtaining through discovery membership and volunteer lists, contributor lists, and past political activities of claimants who engaged in protest activities).

{¶ 11} Notwithstanding important First Amendment concerns, this court previously determined that the commission has jurisdiction to investigate and adjudicate complaints containing allegations of fraudulent and false statements in campaign activities. *Common Cause I*, supra. In that appeal, this court discussed whether the complaints should have been dismissed based on the

---

5. Alliance alleges violations of R.C. 3517.21(B)(9) and (10). R.C. 3517.21(B) provides that no person "shall knowingly and with intent to affect the outcome of such campaign * * * (9) [m]ake a false statement concerning the voting record of a candidate or public official; (10) [p]ost, publish, circulate, distribute, or otherwise disseminate a false statement concerning a candidate, either knowing the same to be false or with reckless disregard of whether it was false or not, if the statement is designed to promote the election, nomination, or defeat of the candidate." Alliance also alleges violations of R.C. 3599.03(A), which provides that no corporation or nonprofit corporation "shall pay or use * * * the corporation's money or property * * * for or in aid of or opposition to a political party, a candidate for election or nomination to public office, [or] a political action committee." Whoever violates division (A) shall be fined not less than $500 and not more than $5,000. R.C. 3599.03(B) provides, "No officer, stockholder, attorney, or agent of a corporation or nonprofit corporation * * * or other individual shall knowingly aid, advise, solicit, or receive money or other property in violation of division (A) of this section." Whoever violates division (B) shall be fined not more than $1,000, or imprisoned not more than one year, or both.

commission's interpretation of *Buckley* at that time. We held that *Buckley* did *not* extend First Amendment protection to speech that is either known to be false or that is disseminated with reckless disregard of whether it is false. *Common Cause I,* supra, 150 Ohio App.3d 31, 2002-Ohio-5965, 779 N.E.2d 766, at ¶ 23, quoting *Chamber of Commerce of the United States of Am. v. Ohio Elections Comm.* (S.D.Ohio 2001), 135 F.Supp.2d 857, 869 (" 'Further, * * * this issue of sanctioning libel or slander occurring in the context of an election, is nowhere addressed in *Buckley.* * * * [N]either *Buckley,* nor any other case cited by the Plaintiffs, affords defamatory speech * * * greater or lesser protections depending on whether the group engaged in issue-based speech or express advocacy or opposition to a candidate' ").

{¶ 12} The opinion states:

[T]he commission may constitutionally determine that statements known to be false or which were made with reckless disregard as to their falsity violate Ohio law and are not protected by the First Amendment. * * * Disseminators of false statements may not rely on First Amendment protections, regardless of whether the speech contains the so-called "magic words" expressing advocacy of or opposition to a particular candidate.

*Common Cause I,* supra, 150 Ohio App.3d 31, 2002-Ohio-5965, 779 N.E.2d 766, at ¶ 24.

{¶ 13} The court concluded that the commission has exclusive jurisdiction over such allegations and is charged with investigating and adjudicating them as appropriate. Id. The commission "clearly errs" by dismissing them on the ground that the ads do not contain express words of advocacy. Id.

{¶ 14} Our opinion in *Common Cause I* is further bolstered by the recent United States Supreme Court decision in *McConnell v. Fed. Election Comm.* (2003), 540 U.S. 93, 124 S.Ct. 619, 157 L.Ed.2d 491. Plaintiffs argued that *Buckley* drew a constitutionally mandated line between express advocacy and issue advocacy and that the latter category could not be restricted. The court rejected this argument. The court stated:

[A] plain reading of *Buckley* makes clear that the express advocacy limitation, in both the expenditure and the disclosure contexts, was the product of statutory interpretation rather than a constitutional command. In narrowly reading the FECA provisions in *Buckley* to avoid problems of vagueness and overbreadth, we nowhere suggested that a statute that was neither vague nor overbroad would be required to toe the same express advocacy line.

Id. at 191–192, 124 S.Ct. at 688, 157 L.Ed.2d 491.

{¶ 15} The *McConnell* court further noted that the "magic words" test is "functionally meaningless" and has not "aided the legislative effort to combat real or apparent corruption." Id., 540 U.S. at 194, 124 S.Ct. at 689, 157 L.Ed.2d 491.

{¶ 16} Therefore, we find that the commission has jurisdiction to investigate the complaints at issue. Accompanying the power to investigate is the authority to subpoena relevant documents to determine whether an actual violation occurred. Accordingly, appellants' first assignment of error is overruled.

{¶ 17} Since appellants' fourth assignment of error addresses the proper standard and burden of proof applied in subpoena-enforcement actions, we now turn to that issue. Appellants argue that the trial court erred in not placing the burden on the commission to demonstrate that compliance with the subpoena was appropriate. Appellants maintain that because the matter might be referred for criminal prosecution at the conclusion of the proceedings before the commission, we must consider the protections provided to criminal defendants.

■ {¶ 18} Generally, an appellate court reviews a trial court's decision whether to quash or enforce a subpoena under an abuse-of-discretion standard. *Petro v. N. Coast Villas Ltd.* (2000), 136 Ohio App.3d 93, 96, 735 N.E.2d 985. Only when a trial court's decision is based on a specific construction of law does an appellate court review the decision under a de novo standard. Id.

■ {¶ 19} It is clear under Ohio administrative law that a subpoena will be judicially enforced so long as (1) the inquiry is permitted by law, (2) the records sought are relevant to the matter in issue, and (3) the records' disclosure will not cause unreasonable costs and difficulty. *State ex rel. Ohio Civ. Rights Comm. v. Gunn* (1976), 45 Ohio St.2d 262, 74 O.O.2d 422, 344 N.E.2d 327; *Petro*, supra, 136 Ohio App.3d at 98, 735 N.E.2d 985.[6] The commission's subpoena authority extends to the production of "relevant papers, books, accounts, and reports." R.C. 3517.153(B).[7] As to the first prong, we have determined that the law permits the present inquiry. The question becomes, which party bears the burden of proof as to relevancy and reasonableness? *Petro*, at 99, 735 N.E.2d 985. This question turns on the nature of a subpoena-enforcement action.

{¶ 20} Subpoena-enforcement actions are generally viewed as summary proceedings. *Gunn*, supra, 45 Ohio St.2d 262, 74 O.O.2d 422, 344 N.E.2d 327 (when recipient of a subpoena refuses to obey it, the Ohio Civil Rights Commission

---

6. The test urged by appellants requires satisfaction of the following four elements: (1) the documents are evidentiary and relevant, (2) the documents are not otherwise procurable reasonably in advance of trial by exercise of due diligence, (3) the requesting party cannot prepare for trial without such production, and (4) the application is made in good faith and is not intended as a general fishing expedition. *United States v. Nixon* (1974), 418 U.S. 683, 94 S.Ct. 3090, 41 L.Ed.2d 1039.

7. Likewise, under Civ.R. 26(B), parties may obtain discovery regarding any matter, not privileged, that is relevant to the subject matter involved. There is no ground for objection that the information sought will be inadmissible at trial so long as the information appears reasonably calculated to lead to the discovery of admissible evidence.

("OCRC") may petition the court of common pleas for summary enforcement without filing a complaint or issuing summons); *Petro*, supra, 136 Ohio App.3d 93, 735 N.E.2d 985. In *Gunn*, the statute provided OCRC the authority to petition the court of common pleas for enforcement of an administrative subpoena if an individual refuses to obey it. The court discussed the Ohio Rules of Civil Procedure and found that an action to enforce a subpoena constitutes a special statutory proceeding within the meaning of Civ.R. 1(C).[8] The court further found that the Civil Rules were inapplicable. The court stated:

> To render the enforcement provisions of R.C. 4112.04(B)(6) subject to the complaint and summons requirements of the Civil Rules would be contrary to the above mandates; such a result would cause significant delay in the commission's investigatory process and, in so doing, would frustrate its statutory duty * * *. Additionally * * * proceedings under R.C. 4112.06(B)(6) are ancillary to the commission's exercise of its investigatory function.

*Gunn*, supra, 45 Ohio St.2d at 266, 74 O.O.2d 422, 344 N.E.2d 327.

{¶ 21} Like the statute at issue in *Gunn*, the commission may petition the court for enforcement of a subpoena "[u]pon the refusal of any person to obey" it. R.C. 3517.153(B). The commission is charged with investigating and determining complaints before it, occasionally in an expedited manner, much like OCRC or the Bureau of Workers' Compensation ("BWC"). See R.C. 3517.153 through R.C. 3517.157; *State ex rel. Galbraith v. Indus. Comm. of Ohio*, Franklin App. No. 02AP–1214, 2003-Ohio-7025, 2003 WL 22999364 (BWC is not bound by strict rules of procedure in issuing subpoenas; the purpose of a statute granting an administrative agency the power to investigate is to allow a summary proceeding); *State of Ohio Med. Bd. v. McCarthy* (Oct. 5, 1984), Montgomery App. No. CA 8807, 1984 WL 4050 (the proceedings to enforce the subpoena issued by the medical board are ancillary and summary in nature).

{¶ 22} Based on the limited precedent on this issue, we find that the Civil Rules do not apply to the present action because it is a special statutory proceeding within the meaning of Civ.R. 1(C). When the Civil Rules do not apply, the burden of proof rests with the party *challenging* the subpoena. *Petro*, supra, 136 Ohio App.3d at 99, 735 N.E.2d 985. Therefore, appellants have the burden to demonstrate irrelevancy and oppressiveness. Accordingly, we must determine whether appellants have met their burden, which leads to their second and third assignments of error. Appellants' fourth assignment of error is overruled.

---

**8.** Civ.R. 1(C) provides: "These rules, to the extent that they would by their nature be clearly inapplicable, shall not apply to procedure * * * (7) in all other special statutory proceedings * * *."

 {¶ 23} In their second assignment of error, appellants maintain that the identity of the contributors is irrelevant to a claim of false statements because the intent of CSO in producing the ads can be ascertained from discovery directed at CSO and the Ohio Chamber. Appellants also claim that the identity of contributors will not aid the commission in its determination of whether CSO is a PAC because the officers are available for discovery. Further, appellants argue that the discovery sought is solely for improper purposes. We disagree.

{¶ 24} We find the list of contributors relevant to the question of whether CSO operates as a PAC as that term is defined under Ohio law. The types of contributors and the amount of the contributions may provide the commission with information regarding the purpose of CSO. Further, the commission may find it beneficial to speak with certain contributors in order to determine their beliefs as to what CSO sought to accomplish with the ads. The contributors may know nothing, but that does not mean the list is not relevant at this stage of the proceedings. Further, although the identity of the contributors may ultimately lead to new complaints, this fact does not automatically compel the conclusion that the information is sought solely for an improper purpose. As stated, the list is relevant to the intent and purpose behind CSO's activities. Whether the list will aid Alliance in demonstrating falsity of the statements is questionable. However, the list is relevant for other purposes. Accordingly, appellants' second assignment of error is overruled.

{¶ 25} In their third assignment of error, appellants maintain that the trial court erred in finding that the subpoenas were not burdensome or oppressive, because compliance would require the violation of third-party rights guaranteed under the First Amendment. Appellants have the burden of proving that the subpoenas are burdensome and oppressive. Id. For the reasons articulated in our discussion under assignment of error number one, the First Amendment does not protect false and/or fraudulent statements. *Common Cause I*, supra.

{¶ 26} Appellants argue that if the identity of the contributors is disclosed, the individuals or organizations will be subject to threats or reprisals. For example, in *Natl. Assn. for the Advancement of Colored People v. Alabama* (1958), 357 U.S. 449, 78 S.Ct. 1163, 2 L.Ed.2d 1488, the state of Alabama filed suit against the National Association for the Advancement of Colored People ("NAACP") to oust it from the state and enjoin it from conducting further activities. As part of discovery, the government requested disclosure of the membership lists. The NAACP argued that compelled disclosure of its members would seriously infringe their First Amendment right to freely associate. Id. at 460, 78 S.Ct. 1163, 2 L.Ed.2d 1488. The United States Supreme Court agreed under the factual circumstances of the case.

{¶ 27} The *NAACP* court stated that the freedom to associate for the advancement of beliefs and ideas is "an inseparable aspect of the 'liberty' assured by the Due Process Clause * * * which embraces freedom of speech." Id. Further:

Inviolability of privacy in group association may in many circumstances be indispensable to preservation of freedom of association, particularly where a group espouses dissident beliefs. * * *

We think that the production order, in the respects here drawn in question, must be regarded as entailing the likelihood of a substantial restraint upon the exercise by petitioner's members of their right to freedom of association. Petitioner has made an uncontroverted showing that on past occasions revelation of the identity of its rank-and-file members has exposed these members to economic reprisal, loss of employment, threat of physical coercion, and other manifestations of public hostility. Under these circumstances, we think it apparent that compelled disclosure of * * * membership is likely to affect adversely the ability of petitioner and its members to pursue their collective effort to foster beliefs which they admittedly have the right to advocate, in that it may induce members to withdraw from the Association and dissuade others from joining it because of fear of exposure of their beliefs shown through their associations and of the consequences of this exposure.

Id. at 462–463, 78 S.Ct. 1163, 2 L.Ed.2d 1488.

{¶ 28} The risk outweighed the state interest in determining whether the NAACP was conducting intrastate business in violation of Alabama law. However, a *subjective* fear of reprisal is insufficient to invoke First Amendment protection against a disclosure requirement. *Friends Social Club v. Secy. of Labor* (E.D.Mich.1991), 763 F.Supp. 1386, 1394, citing *Buckley,* supra, 424 U.S. at 71–72, 96 S.Ct. 612, 46 L.Ed.2d 659.

{¶ 29} In *Friends Social Club,* the Department of Labor ("DOL") was investigating several groups' connection to a union regional election. The DOL issued subpoenas requesting information that would disclose the names of individual contributors and, necessarily, those individuals' affiliation with a particular group. The plaintiffs commenced an action to quash the subpoenas on the grounds that the disclosure would violate the members' and contributors' First Amendment right of association. The court disagreed. *Friends Social Club,* supra 763 F.Supp. at 1394–1395.

{¶ 30} After initially determining that the subpoenas requested relevant information, the court concluded that the affidavits submitted to support their contention of a First Amendment violation were insufficient. "Plaintiffs who claim their constitutional rights have been 'chilled' must present evidence of a 'specific present objective harm' or a threat of 'a specific future harm.'" Id. at 1393, quoting *Ghandi v. Police Dept. of City of Detroit* (C.A.6, 1984), 747 F.2d

338, 347. Taken together, the affidavits established only plaintiffs' subjective fears that disclosure of contributors may subject them to harassment or intimidation. *Friends Social Club,* supra, 763 F.Supp. at 1394. The court found no factual basis to conclude that enforcement of the subpoenas would have a chilling effect on their First Amendment rights. Id.

{¶ 31} As in *Friends Social Club,* the present case does not compel a finding that enforcement of the subpoenas is oppressive or burdensome. There is no factual basis in this record to support appellants' contention that if the contributors are disclosed, the individuals or organizations will be harassed, intimidated, or threatened. Appellants' fear is merely subjective and does not warrant First Amendment protection on grounds of oppressiveness. The claimed oppression herein is clearly less devastating than that in *NAACP,* supra. It is merely a subjective belief that disclosure might cause them harassment, more akin to *Friends Social Club,* supra. Accordingly, appellants' third assignment of error is overruled.

{¶ 32} Finally, in their fifth assignment of error, appellants contend that the trial court erred in imposing a fine of $25,000 per day for noncompliance with the subpoenas. Appellants argue that the $25,000 per day for noncompliance violates the Excessive Fines Clause of the Eighth Amendment. We disagree.

{¶ 33} It has been held that the excessive fines clause of the Eighth Amendment does not apply to civil contempt sanctions. *In re Grand Jury Proceedings* (C.A.7, 2002), 280 F.3d 1103, 1110 ("a fine assessed for civil contempt does not implicate the Excessive Fines Clause"), citing *United States v. Mongelli* (C.A.2, 1993), 2 F.3d 29, 30; *Spallone v. United States* (1988), 487 U.S. 1251, 1257, 109 S.Ct. 14, 101 L.Ed.2d 964 (memorandum decision). The test for determining whether a sanction is criminal or civil is whether the sanctions are designed primarily to coerce the party into complying with the court's order, or whether the purpose is to punish the party, vindicate the court's authority, or deter future misconduct. *In re Grand Jury,* supra, 280 F.3d at 1107. As most sanctions contain both coercive and punitive elements, it is necessary to examine the character of the relief itself. Id. If the party against whom the sanctions are imposed is able to purge the contempt by an affirmative act, the order is coercive and civil in nature. Id. If there is no ability to purge, the order is generally considered punishment and criminal in nature.

{¶ 34} We find the order to be civil in nature. The trial imposed placed a monetary fine in order to *secure compliance* with the order. Appellants have not yet violated the order. In the event appellants fail to comply and sanctions are imposed, appellants retain the power to purge themselves of any contempt by

paying the fines or producing the documents. Because of the order's civil nature, the Excessive Fines Clause of the Eighth Amendment does not apply.

{¶ 35} Even if the Eighth Amendment applied, the trial court acted within its discretion. When a party fails to follow proper discovery procedures, the trial court is vested with discretion in determining whether sanctions should be imposed and to what extent. *Cleveland v. Otonoga,* Cuyahoga App. No. 80864, 2002-Ohio-4921, 2002 WL 31107550. The standard of review is whether the trial court abused its discretion in determining the sanction imposed. Id.; *Malaco Constr., Inc. v. Jones* (Aug. 24, 1995), Franklin App. No. 94APE10–1466, 1995 WL 506026, citing *Russo v. Goodyear Tire & Rubber Co.* (1987), 36 Ohio App.3d 175, 179, 521 N.E.2d 1116. "Abuse of discretion" connotes more than a mere error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. *Malaco,* supra.

{¶ 36} Clearly, the stated fine is heavy. It is intended to bring about compliance with the trial court's order. However, we cannot say that the trial court abused its discretion in imposing this fine. We reiterate the fact that the trial court has not yet imposed any monetary sanctions, as the order was stayed pending resolution of this appeal. Accordingly, appellants' fifth assignment of error is overruled.

{¶ 37} Alliance also appeals the trial court's denial of its motion to intervene. The trial court found the Civil Rules inapplicable to the subpoena-enforcement action, as it was a special statutory proceeding. Alternatively, the trial court found that Alliance had failed to meet the requirements for intervention under Civ.R. 24(A). We agree.

{¶ 38} In reviewing the trial court's denial of Alliance's motion to intervene, the proper standard of review is whether the trial court abused its discretion. *State v. Columbus,* Franklin App. No. 02AP–963, 2003-Ohio-2658, 2003 WL 21196837.

{¶ 39} As held previously, the Civil Rules do not apply to this proceeding. In any event, we find that Alliance does not meet the requirements set forth in Civ.R. 24. Intervention as of right is allowed by Civ.R. 24(A)(2), which provides that upon timely application anyone shall be permitted to intervene if (1) the applicant claims an interest relating to the property or transaction that is the subject of the action, (2) the party is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, (3) the applicant's interest is not adequately represented by the existing parties, and (4) the motion is timely. *State v. Columbus,* supra, 2003-Ohio-2658, 2003 WL 21196837, citing *Fairview Gen. Hosp. v. Fletcher* (1990), 69 Ohio App.3d 827, 830–831, 591 N.E.2d 1312. All of these conditions must be met. Id.

{¶ 40} We hold that the trial court did not abuse its discretion in finding that Alliance's interests are adequately represented by the commission. The trial court allowed Alliance to be present during the subpoena-enforcement proceeding. While the trial court recognized Alliance's purpose in desiring to intervene, it ultimately found that the commission's objective is the same as Alliance's interest, namely, to obtain the contributor list. "Representation is generally considered adequate if no collusion is shown between the representative and an opposing party, if the representative does not represent an interest adverse to the proposed intervenor and if the representative has been diligent in prosecuting the litigation." Id. at 835, 591 N.E.2d 1312. Here, Alliance has made no showing that the commission has an interest adverse to it at least with respect to enforcement of the subpoena. Therefore, the trial court did not abuse its discretion in denying Alliance's motion. Accordingly, Alliance's sole assignment of error is overruled.

{¶ 41} Based on the above, appellants' first assignment of error is overruled. In *Common Cause I*, 150 Ohio App.3d 31, 2002-Ohio-5965, 779 N.E.2d 766, this court determined that the commission has jurisdiction to investigate and adjudicate claims of election law violations. The First Amendment does not protect speech that is false or defamatory even though it does not contain magic words. Appellants' second assignment of error is overruled. The contributor list is relevant to determine the purpose of CSO and whether it constitutes a PAC under Ohio law. Appellants' third assignment of error is overruled. There is no evidence to indicate that appellants or their members will be subjected to threats or harassment if the list is disclosed.

{¶ 42} Appellants' fourth assignment of error is overruled. The Civil Rules do not apply to special statutory proceedings, such as a subpoena-enforcement action. Therefore, appellants had the burden of proof regarding relevancy and whether the subpoenas were burdensome or oppressive. Appellants' fifth assignment of error is overruled. The Excessive Fines Clause of the Eighth Amendment does not apply to civil sanctions. Even if the Eighth Amendment applied, the trial court was within its discretion in imposing the monetary amount for noncompliance. Finally, the trial court did not abuse its discretion in denying Alliance's motion to intervene. With respect to this proceeding, the commission adequately represents Alliance's interest. Alliance's sole assignment of error is accordingly overruled.

{¶ 43} Accordingly, appellants' first, second, third, fourth, and fifth assignments of error are overruled. Alliance's sole assignment of error is overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.

Judgment affirmed.

PEGGY BRYANT and PETREE, JJ., concur.