[Cite as *State v. Standard Wellness Co., L.L.C.*, 2022-Ohio-1604.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio,<br>Board of Pharmacy, | : | |
| | : | |
| Plaintiff-Appellee, | : | |
| | : | No. 21AP-606 |
| v. | | (C.P.C. No. 21-MS-000127) |
| | : | |
| Standard Wellness Company, LLC, | : | (REGULAR CALENDAR) |
| | : | |
| Defendant-Appellant. | : | |
| | : | |

D E C I S I O N

Rendered on May 12, 2022

**On brief:** *Dave Yost*, Attorney General, and *Henry G. Appel*, for appellee. **Argued:** *Henry G. Appel.*

**On brief:** *Mayle LLC*, *Andrew R. Mayle*, *Ronald J. Mayle*, and *Benjamin G. Padanilam*; *Connell Foley LLP*, *Leo J. Hurley, Jr.* (pro hac vice), for appellant. **Argued:** *Leo J. Hurley, Jr.*

**On brief:** *Frantz Ward LLP*, *Patrick F. Haggerty*, *Gregory R. Farkas*, and *Thomas Haren*, for Amicus Curiae Ohio Medical Cannabis Industry Association.

APPEAL from the Franklin County Court of Common Pleas

NELSON, J.

{¶ 1} Appellant Standard Wellness Company, LLC, a medical marijuana cultivating enterprise, appeals the decision of the trial court that granted an application from the State of Ohio Board of Pharmacy (the "board") to compel Standard Wellness to produce documents pursuant to board subpoena. Because we conclude that the trial court was guided in its determination by an overly expansive view of board powers, we will return

the matter to the trial court for full evaluation of the request in light of the particular authority that the statutes accord to the board.

{¶ 2} The October 20, 2021 Decision and Entry from which Standard Wellness appeals recites that the board asks Standard Wellness to produce "one month of e-mails [March 1 through April 1, 2020] from [or to] eight [we count perhaps nine] individuals associated with the Company [as identified by some 11 separate e-mail accounts] * * *. The Board seeks the information to determine whether there has been a criminal violation of Ohio's Medical Marijuana Control Program ('MMCP')." Decision at 2. As we shall observe, the legislature's charge to the board is not quite so sweeping as that last quoted sentence might imply: the board has significant investigative authority in connection with the medical marijuana program, but only within its purview as specified by statute and corresponding regulation.

{¶ 3} The trial court's Decision begins, appropriately, with a review of the "statutory background." Decision at 3-7. As the Decision notes, "[t]he MMCP regulates the activities of 'cultivators,' 'processors,' and 'dispensaries.' A cultivator is defined as an 'entity that has been issued a certificate of operation by [the Department of Commerce] to grow, harvest, package, and transport medical marijuana as permitted under [R.C.] Chapter 3796.' *See* [Ohio Admin.Code] Rule 3796:1-1-01(A)(9). * * * * A dispensary is an entity 'licensed pursuant to sections 3796.04 and 3796.10 of the Revised Code * * * to sell medical marijuana to qualifying patients and caregivers.' *See* O.A.C. Rule 3796:1-1-01(A)(14). Thus, cultivators grow the raw plant material, * * * while dispensaries in turn sell [marijuana] products to qualifying medical marijuana patients." Decision at 3.

{¶ 4} The Decision observes that "R.C. 3796.02 provides, in part, that the MMCP is established 'in [the Department of Commerce] and the [Board].' R.C. 3796.02 goes on to provide that Commerce 'shall provide for the licensure of medical marijuana cultivators and processors' while the Board 'shall provide for the licensure of retail dispensaries.' " *Id.* "Significantly," says the trial court, "R.C. 3796.02 goes on to provide that *both* Commerce and the Board 'shall administer the [MMCP] program.' " *Id.* (emphasis in original).

{¶ 5} Although the Decision does not directly then refer to R.C. 3796.03, which empowers the Department of Commerce to promulgate its rules regarding the medical marijuana program, including "rules establishing standards and procedures for the

licensure of cultivators," *see* R.C. 3796.03(A)(2), the Decision continues by reciting that "R.C. 3796.04 authorizes the Board to promulgate rules that establish 'standards and procedures' for the MMCP." Decision at 4. "These rules shall 'do all of the following,' including but not limited to: (1) establishing licensing procedures [but only, we are constrained to note, with regard to 'licenses and registrations *it* issues under this chapter,' *see* R.C. 3796.04((B)(1) (emphasis added)]; (2) establishing the number of dispensaries to be licensed; * * * (4) establishing training requirements for dispensary employees; and (5) specifying the criminal offenses for which a person 'will be disqualified from employment with a license holder.' In addition, the Board has the authority to issue rules necessary for the 'administration and the implementation and enforcement of' the MMCP. Finally, the Board has the authority to issue rules that consider[] the 'standards and procedures' that have been found to be 'best practices' relative to the use of medical marijuana." Decision at 4.

{¶ 6} The Decision further notes that "[p]atients and caregivers who seek licensure under the MMCP are required to submit their applications for licensure to the Board. R.C. 3796.08. * * * * R.C. 3796.10 provides that the Board shall issue licenses to dispensaries if all the conditions in paragraph (B) are met. * * * * R.C. 3796.11 provides that upon the request of either the Board or Commerce, the Ohio Department of Taxation shall provide information describing [the tax status of licensure applicants]. * * * * R.C. 3796.12 authorizes the Board to conduct a criminal background check into any applicant for a dispensary license." *Id*. at 5.

{¶ 7} The Decision then turns to powers at issue here. "R.C. 3796.15 gives the Board wide enforcement discretion," the trial court observes. Decision at 6. "For example, paragraph (A) provides, in part, that if the Board has information that '*any rule adopted under this chapter has been violated,* it *shall* investigate the matter and take any action as it considers appropriate.' " *Id*. at 6 (with emphasis supplied by the trial court). We pause in our description of the trial court's Decision here to note that its phrase "in part" is doing some heavy lifting. This part of the trial court's Decision omits the introductory sentence of that Revised Code subsection, which reads: "The state board of pharmacy shall enforce, or cause to be enforced, sections 3796.08 [regarding patient and caregiver registration], 3796.10 [dispensary license applications], 3796.20 [dispensary activities], 3796.22 [patient

activities] and 3796.23 [caregiver activities] of the Revised Code." As we will discuss below, the first sentence of the statutory subsection sheds light on the import of the second.

{¶ 8} "Also," the Decision continues (in reference, we think, to R.C. 3796.15(C)), "if the Board has 'clear and convincing evidence of a danger of immediate and serious harm to any person, [it] may place under seal all medical marijuana owned by or in the possession, custody, or control of *the affected license holder or registrant.'*" Decision at 6 (emphasis in original). We pause again to note that R.C. 3796.15(C) begins with the phrase "[i]f the board suspends, revokes, or refuses to renew any license or registration issued under this chapter and [determines clear and convincing evidence of danger] * * *." We read that language to refer to licenses and registrations that the board itself issues—to patients and caregivers, pursuant to R.C. 3796.08, and to dispensaries, pursuant to R.C. 3796.10, but not, for example, to cultivators (as licensed by the Department of Commerce pursuant to R.C. 3796.09). That is, we understand the first sentence of R.C. 3796.15(C) to run roughly parallel to the first sentence in R.C. 3796.15(A).

{¶ 9} The Decision then reasons: "Thus, this Section [3796.15] gives the Board the authority to enforce 'any rule' against an 'affected license holder' under the MMCP, not just against dispensaries." Decision at 6.

{¶ 10} Having determined that "[c]learly, the Board has extensive statutory authority to regulate medical marijuana under the MMCP," the Decision notes that the board "also has its own inherent powers and duties proscribed by Chapter 4729." *Id.* at 6-7 (with examples). Under R.C. 4729.24(A), the board has investigatory authority that includes the power to issue subpoenas and to seek enforcement of its subpoenas through application to the Franklin County Court of Common Pleas for orders compelling production pursuant to the Rules of Civil Procedure. Decision at 7.

{¶ 11} The Decision further states that R.C. 4729.24(B) "provides, in part, that before a subpoena is issued, the Board 'and the office of the attorney general' shall determine whether 'probable cause exists to believe that' the investigation has revealed '*a violation of this chapter or Chapters * * * 3796 of the Revised Code or any rule adopted by the*' Board." Decision at 7 (emphasis in original). Here, too, the trial court's phrase "in part" is significant. R.C. 4729.24(B) begins by explaining the sorts of subpoenas to which it applies, and reads in full:

(B) A subpoena for patient record information may be issued only on approval by the board's executive director and the president or another board member designated by the president, in consultation with the office of the attorney general. Before issuing the subpoena, the executive director and the office of the attorney general shall determine whether probable cause exists to believe that the complaint filed alleges, or an investigation has revealed, a violation of this chapter or Chapters 2925., 3715., 3719., or 3796. of the Revised Code or any rule adopted by the board, that the records sought are relevant to the alleged violation and material to the investigation, and that the records cover a reasonable period of time surrounding the alleged violation.

{¶ 12} After noting the board's statutory power to investigate potential violations of Chapter 4729 (providing primarily for pharmacy regulation), the Decision finishes its statutory overview by concluding: "Clearly, the Board has the authority to issue a subpoena pursuant to an investigation into alleged violations of R.C. Chapter 3796." Decision at 7. "With this statutory framework in mind," the Decision turns to the board's enforcement application. *Id.*

{¶ 13} The Decision recites that the board "argues * * * that it is 'currently investigating potential violations of' the MMCP and the regulations adopted thereunder. The Board alleges that these violations have occurred 'in medical marijuana dispensaries' and resulted from 'marijuana that was not grown in Ohio [and] was transported to medical marijuana dispensaries licensed by the Board.' To perform this investigation, the Board claims 'it will need' " the subpoenaed e-mails involving the nine specified individuals. Decision at 8. Citing *Ohio Elections Comm. v. Ohio Chamber of Commerce*, 158 Ohio App.3d 557, 2004-Ohio-5253, ¶ 19 (10th Dist.), the Decision states that an administrative subpoena "will be judicially enforced so long as: (1) the inquiry is permitted by law; (2) the records sought are relevant to the matter in issue; and (3) the records' disclosure will not cause unreasonable costs and difficulty." Decision at 8. The trial court "finds that the Board has satisfied all of these elements." *Id.*

{¶ 14} Reprising its previous statutory analysis, the Decision says that:

R.C. 3796.15 gives the Board wide enforcement discretion. For example, paragraph (A) provides, in part, that if the Board has information that "*any rule adopted under this chapter has been violated*, it *shall* investigate the matter and take any

action it considers appropriate." * * * Also, if the Board has "clear and convincing evidence of a danger of immediate and serious harm to any person, [it] may place under seal all medical marijuana owned by * * * *the affected license holder or registrant*." * * * Thus, R.C. 3796.15 gives the Board the authority to enforce "any rule" against an "affected license holder" under the MMCP, not just against dispensaries. In addition, R.C. 3796.02 provides that the MMCP is established "in [the Department of Commerce] and the [Board]." Finally, R.C. 3796.02 provides that *both* Commerce and the Board "shall administer the [MMCP] program." Consequently, the Court finds that the Board's inquiry is allowed by law.

Decision at 8-9 (emphasis in original).

{¶ 15} The Decision finds the second prong of the test met because the affidavit of board investigator David Gonzales "states that the Board has 'evidence that gives [it] a good faith reason to believe that a truck drove from Utah to Ohio, delivering marijuana plants to [Standard Wellness] and that marijuana harvested from those plants has been sold in dispensaries.' * * * This Affidavit has not been rebutted[.]" *Id.* at 9.

{¶ 16} As to the third prong, the Decision finds that Standard Wellness has not established that compliance would create an undue burden, and that trade secret issues will be addressed by having documents filed under seal. *Id.* at 9-10.

{¶ 17} On that rationale, the trial court granted enforcement of the board's subpoena. The following month, the trial court granted a motion by Standard Wellness to stay its order pending appeal. November 19, 2021 Order Granting Stay. In its stay order, the trial court underscored that it had construed the board's statutory authorization very broadly:

> [A]lthough the board now claims on page 1 of its Memo Contra that the "primary focus" is to investigate individuals personally licensed by the Board as dispensary associated key employees and whether any medical marijuana dispensaries knowingly sold marijuana sourced from outside Ohio's medical marijuana program, this Court characterized the Board's investigation as the pursuit of "information to determine whether there has been a criminal violation of Ohio's [MMCP]."

Order Granting Stay at 8. Its enforcement decision, the trial court said, "did not address whether the Board's investigation remained within the realm of an administrative inspection or fell beneath the umbrella of an investigation of crime." *Id.* at 9; *see also id.* at

8 (referring to a "probable cause prerequisite" set forth in R.C. 4729.24(B)). And "[p]erhaps most important to the likelihood of success on the merits on appeal * * * is the fact that this case brought before the Court novel issues of first impression regarding the Board's authority to regulate Ohio's MMCP." *Id.* at 9.

{¶ 18} We credit the trial court's candor in its description of the earlier Decision. That description is fully consistent with the stated rationale of the Decision itself, which does appear to rest on reading the board's authority as extending to any potential violation of the medical marijuana program by any state licensee.

{¶ 19} Standard Wellness submits four assignments of error:

> I. The trial court erred in granting the Board's Motion to Compel pursuant to R.C. 4729.24 since the Board failed to present any evidence the Board and the office of the attorney general determined that [for?] the Board's investigation probable cause existed to show that any individual or entity had violated Chapters 4729, 2925, 3715, 3719, or 3796 of the Revised Code or any Rule adopted by the Board.
>
> II. The trial court erred when it found that the Board's investigation and accompanying Subpoena did not exceed the bounds of its legal authority under R.C. 3796 and the regulations adopted thereunder as part of the State of Ohio's Medical Marijuana Control Program, under R.C. 4729, or under 2925, requiring the court to deny the Board's motion and to quash the Subpoena.
>
> III. The trial court erred when it refused to consider whether the investigation leading to the subpoena was criminal in nature rather than administrative, which would have independently required a finding of probable cause related to the issuance of the Subpoena and would have required the court to deny the Board's motion and to quash the Subpoena.
>
> IV. The trial court erred when it failed to meaningfully assess whether the scope of the documents sought by the Subpoena were relevant to the investigation, requiring the court to deny the Board's motion and to quash the Subpoena.

Appellant's Brief at 1-2.

{¶ 20} The first assignment of error is based on, and partially mirrors, the language of R.C. 4729.24(B). That subsection reads in full:

> A subpoena for patient record information may be issued only on approval by the board's executive director and the president or another board member designated by the president, in consultation with the office of the attorney general. Before issuing the subpoena, the executive director and the office of the attorney general shall determine whether probable cause exists to believe that the complaint filed alleges, or an investigation has revealed, a violation of this chapter or Chapters 2925., 3715., 3719., or 3796. of the Revised Code or any rule adopted by the board, that the records sought are relevant to the alleged violation and material to the investigation, and that the records cover a reasonable period of time surrounding the alleged violation.

{¶ 21} The trial court's gloss on this subsection was that it "provides, in part, that before a subpoena is issued, the Board 'and the office of the attorney general' shall determine whether 'probable cause exists to believe that' the investigation has revealed '*a violation of this chapter or Chapter[] * * * 3796 of the Revised Code or any rule adopted by the*' Board." Decision at 7. (emphasis in original). That was one of the statutory provisions cited by the trial court in its lead up to the conclusion that "[c]learly, the Board has the authority to issue a subpoena pursuant to an investigation into alleged violations of R.C. Chapter 3796." *Id.* Consistent with the language of its Decision, the trial court later characterized R.C. 4729.24(B) as establishing a "probable cause prerequisite." Order Granting Stay at 8.

{¶ 22} Standard Wellness submits under its first assignment of error that because the trial court did not find and the record does not show that the board's executive director and the attorney general's office jointly reached a probable cause determination, R.C. 4729.24(B) was not satisfied and the trial court therefore should not have enforced the subpoena. *See, e.g.,* Appellant's Brief at 20 ("the trial court admittedly ignored these statutory burdens in issuing its Decision and Entry"); Reply Brief at 15-17.

{¶ 23} Quite understandably, Standard Wellness did not make this statutory argument to the trial court in opposing the board's enforcement application. *See* June 4, 2021 Respondent's Brief in Opposition to Motion to Compel Compliance (advancing no such argument or citation to R.C. 4729.24(B)). The text of the introductory sentence to R.C. 4729.24(B) reflects that the subsection relates to "[a] subpoena for patient record information," and there is no indication either on the face of the subpoena or in the record

that the board subpoena seeking e-mails to and from various individuals associated with marijuana cultivator Standard Wellness contained patient record information.

{¶ 24} Standard Wellness urges that "[t]he Board is wrong" to read the second sentence of the subsection as limited to the context supplied by the first, Reply Brief at 16, but its argument is entirely unpersuasive. The General Assembly has told us that statutory phrases "shall be read in context and construed according to the rules of grammar and common usage." R.C. 1.42. "Evaluating the context in which a word is written is essential to a fair reading of the text: 'The words of a governing text are of paramount concern, and what they convey, in their [textual] context, is what the text means.' " *Great Lakes Bar Control, Inc. v. Testa*, 156 Ohio St.3d 199, 2018-Ohio-5207, ¶ 9, quoting Scalia & Garner, *Reading Law: The Interpretation of Legal Texts* 56 (2012) (also quoting the same source in reciting that " 'words are given meaning by their context' ").

{¶ 25} Here, the subsection builds upon the context provided in its topic sentence by referring to the same officials—the board's executive director and the office of the attorney general—in both (related) sentences. Even more significantly, the second sentence—the one that Standard Wellness seeks to remove from the context of the first— refers to "the subpoena," using the definite article. Which subpoena is that? The rules of grammar and common usage suggest looking to the nearest referent—"[a] subpoena for patient record information," as discussed in the preceding sentence. The legislative choice to use the non-limiting indefinite article "a" in the subsection's first sentence and then to use the limiting definite article "the" before "subpoena" in the second sentence is of significance. *See, e.g., Crosby-Edwards v. Ohio Bd. of Embalmers & Funeral Dirs.*, 10th Dist. No. 06AP-1220, 2008-Ohio-762, ¶ 29 (endorsing point of *Black's Law Dictionary* 1477 (6 Ed.1990) that "[i]n construing statute, definite article 'the' particularizes the subject which it precedes and is word of limitation as opposed to indefinite or generalizing force 'a' or 'an' ") (other citations omitted).

{¶ 26} Indeed, and advisedly, the Ohio Medical Cannabis Industry Association ("OMCIA"), writing in support of Standard Wellness as amicus, emphasizes that "paragraph (B) of this statute relates exclusively to subpoenas for 'patient record information.' " Opening Amicus Brief at 12. That position permits the amicus to argue, correctly, that far from implying that the board has plenary authority to launch

investigations relating to *any* "violation of * * * Chapter[] * * * 3796" (as the trial court had highlighted), instead "any authority granted to the Board under R.C. 4729.24(B) relates solely to investigations for [sic] patient record information." Opening Amicus Brief at 12; *compare* R.C. 3796.15(A) (empowering the board to enforce particularly specified statutory sections including R.C. 3796.22, which governs medical marijuana activities for registered patients).

{¶ 27} In any event, Standard Wellness did not make its R.C. 4729.24(B) pitch to the trial court at the appropriate time, and cannot prevail on it here. *See, e.g., Nunn v. Ohio Dept. of Ins.*, 10th Dist. No. 18AP-114, 2018-Ohio-4030, ¶ 11 ("[i]t is well-established that a party may not present new arguments for the first time on appeal") (citations omitted). That the trial court did not resolve this interpretive question in its Decision (with no party having raised it to that point) does not rescue the argument, such as it is, from having been waived (and the Decision on appeal is not affected by briefing on the stay motion). *Compare* Appellant's Reply Brief at 15 and fn. 3 (arguing otherwise).

{¶ 28} We overrule Standard Wellness's first assignment of error.

{¶ 29} We find that there is more to Standard Wellness's second assignment of error, as endorsed in part by the opening and reply briefs of the OMCIA amicus. Our reading of the trial court's Decision is that it was premised on a view that the board's powers in administering the medical marijuana control program are coextensive with the authority of the Department of Commerce and that the board is empowered to investigate *any* "*violations of Chapter[] * * * 3796 * * * and rules adopted thereunder*." *See* Decision at 6 (emphasis in original); *see also, e.g., id.* at 7 ("Clearly, the Board has the authority to issue a subpoena pursuant to an investigation into alleged violations of R.C. Chapter 3796"); *id.* at 9 ("Thus, R.C. 3796.15 gives the Board the authority to enforce 'any rule' against an 'affected license holder' under the MMCP, not just against dispensaries").

{¶ 30} Even in its arguments to us, the board's briefing at times urges this sweeping interpretation:

> The statute gives very broad authority to the Board. The Board "***shall*** investigate" whether "***any rule*** adopted under this chapter has been violated[.]" *Id.* [R.C. 3796.15(A)]. By the plain language of the statute, the Board is at least authorized to investigate potential violations of "any rule adopted under this

chapter." *Id.* Notably, this is not limited to rules promulgated
by the Board.

Appellee's Brief at 30 (emphasis in original).

{¶ 31} That understanding reaches too far, we think, to any extent that it allows board investigation unrelated to entities licensed or registered by the board. Nothing should have relieved the trial court from examining whether the subpoena in its various component parts is directed to matters within the board's investigative authority. But in determining whether the board's subpoena is "permitted by law" and "relevant to the matter in issue" before the board, *see id.* at 8, the trial court did not seem to assess the subpoena in light of the board's particular responsibilities and authorities under the medical marijuana control program.

{¶ 32} Evidence submitted by the board indicated that it was "investigating whether one or more individuals affiliated with Standard Wellness * * * improperly imported medical marijuana into Ohio in or about March 2020." *See* Gonzales Aff. (found at June 4, 2021 Hurley Aff. Ex. K, attaching board's May 7, 2021 trial court brief and its Ex. E) at ¶ 4 (adding at ¶ 11 that investigator has "good faith reason to believe that a truck drove from Utah to Ohio, delivering marijuana plants to [Standard Wellness] and that marijuana harvested from those plants has been sold in dispensaries"). The evidence further tied "two of the [nine] individuals whose e-mails were requested" to dispensary operations as licensed dispensary employees. March 25, 2021 Application for Order to Compel at 3; Gonzales Aff. at 6-10.

{¶ 33} We emphatically do not rule here that the board is precluded from seeking to enforce third-party subpoenas properly related to matters within its statutory focus. *Compare, e.g., Petro v. North Coast Villas Ltd.*, 136 Ohio App.3d 93, 98 (9th Dist.2000) (no statute "prevents the State Auditor from seeking documents in the possession of private, third-party entities"); OMCIA Amicus Reply Brief at 1 ("OMCIA agrees that the Board can issue subpoenas to third parties, but only if the subpoenas are relevant to misconduct the Board is statutorily authorized to regulate and enforce") (emphasis omitted). And we do not determine that the subpoena at issue strays outside the bounds of the board's investigative purview: that is a question in the first instance for the trial court to evaluate. But we do conclude that the evaluation must be undertaken in light of the

particular authority that the legislature has given the board in this area—authority that is something less than plenary power to enforce all aspects of Ohio's medical marijuana control program and to oversee regulated entities that the board itself does not license. (Thus, for example, the mere fact that Standard Wellness is licensed by the Department of Commerce as a medical marijuana cultivator would not alone support investigation into its practices by the board.)

{¶ 34} "[A]n administrative body * * * may exercise only the powers and authority which have been conferred upon it by the General Assembly." *Ohio Cent. Tel. Corp. v. Public Utilities Comm.*, 166 Ohio St. 180, 182 (1957). That modest precept is essential to the principles of limited government designed to safeguard our liberties. An administrative board "has only those powers explicitly delegated by statute and must operate within the limitations contained within its enabling statutes." *See Ohio Am. Health Care, Inc. v. Ohio Bd. of Nursing*, 10th Dist. No. 13AP-1020, 2014-Ohio-2422, ¶ 58, citing *Shell v. Ohio Veterinary Med. Licensing Bd.*, 105 Ohio St.3d 420, 2005-Ohio-2423, ¶ 32 (same) (further citations omitted).

{¶ 35} The text and structure of the statutory provisions establishing the medical marijuana control program are, we think, reasonably clear. Pursuant to R.C. 3796.02, the Department of Commerce is to license cultivators, processors, and testing laboratories, while the board licenses dispensaries and registers patients and their caregivers. Although both governmental entities thus "administer the program," they have distinct areas of responsibility. As the board explained in its briefing to the trial court, the program is divided into three parts:

> The Ohio Medical Marijuana Control Program is governed by three government agencies. The Department of Commerce is responsible for the regulation of medical marijuana cultivators, processors, testing laboratories, and employees of those entities; the Board is responsible for the regulation of medical marijuana dispensaries (and their employees), patients, and caregivers; the State Medical Board of Ohio is responsible for the regulation of physicians holding a Certificate to Recommend medical marijuana. However, individuals are often licensed by more than one agency. This is common where a vertically-integrated company i[s] engaged in the cultivation, processing, and/or dispensing of medical marijuana.

June 11, 2021 Reply Brief of the Board at 5; *see also* Appellee's Brief at 32 (board "has authority to discipline patients and caregivers * * * dispensaries * * *, and dispensary employees).

{¶ 36} Thus, for example, the Department of Commerce establishes licensing procedures for cultivators, R.C. 3796.03(A)(2), while the board establishes licensing procedures for dispensaries, R.C. 3796.04(B)(3),(4). The board has authority to "[s]uspend, * * * revoke, or refuse to renew a license or registration *it* issued," R.C. 3796.14(B)(1)(a) (emphasis added), while the Department of Commerce has the same authority with regard to "a license *it* issued," R.C. 3796.14(A)(1)(a) (emphasis added). *Compare also* R.C. 3796.14(A)(2) (department may inspect premises of cultivators, processors, and labs) *with* R.C. 3796.14(B)(2)(b) (board may inspect dispensary premises). Those authorities are parallel, and may from time to time overlap, but they are not coextensive.

{¶ 37} And as the board has acknowledged in at least much of its briefing, that division of responsibility has significant implications for enforcement authority. *See* June 11, 2021 trial court Reply Brief of the Board at 6 ("The Board has never asserted it has any authority to take administrative action against Standard Wellness"); Appellee's Brief at 32 (disclaiming intent "to discipline" a Department of Commerce licensee). Moreover, the General Assembly has defined and thereby limited the board's investigative power with reference to the scope of its defined disciplinary authority.

{¶ 38} The General Assembly spelled out the enforcement authority of the board in R.C. 3796.15. The first sentence of R.C. 3796.15 authorizes the board to enforce specified statutory sections within its particular purview, involving dispensaries and patient and caregiver activities. The second sentence, which we read in the context of the first, grants the board power to investigate potential violations of those specified statutory sections or of "any rule adopted under this chapter." R.C. 3796.15(A). Consistent with the authority of the board from the immediately preceding statutory section to regulate a license "it issued under this chapter," R.C. 3796.14(B)(1), and consistent with the statutory limitations on board enforcement to matters implicating the specified statutory sections involving dispensaries, patients, and caregivers, we do not read this statutory provision to empower

the board to investigate potential violations divorced from violations by board licensees and registrants.

{¶ 39} The trial court in the analysis underlying its Decision does not appear to have been informed by or focused on this same understanding. *Compare* Decision at 6 (describing board's "wide" enforcement authority by reciting—with emphasis in original, but without reference to the immediately preceding statutory limitations—that "if the Board has information that '*any rule adopted under this chapter has been violated*, it *shall* investigate' "); *compare also* Appellee's Brief at 31 (urging that "R.C. 3796.15(A) gives the Board the power to 'investigate' any potential rule violation * * * ").

{¶ 40} And while the trial court also emphasized the board's authority to place under seal marijuana controlled by an " '*affected license holder or registrant*,' " Decision at 6 (emphasis in original), it did not acknowledge in quoting this part of R.C. 3796.15(C) that the phrase "affected license holder or registrant" there connotes only a license holder or registrant over which the board itself has regulatory control. *Compare* R.C. 3796.15(C) (board may "seal" marijuana only "[i]f the board suspends, revokes, or refuses to renew any license or registration" of the drug holder) *with* Decision at 6 ("Thus, this Section gives the Board the authority to enforce 'any rule' against an 'affected license holder' under the MMCP, not just against dispensaries").

{¶ 41} In promulgating its rules, the board has agreed that the statutes limit its investigative authority under the program. Its own rule 3796:6-4-01, regarding program "Enforcement generally," reads:

> Pursuant to section 3796.15 of the Revised Code, the state board of pharmacy shall regulate activities and enforce compliance with activities as they relate to the dispensing of medical marijuana and medical marijuana products to registered patients and designated caregivers. The state board of pharmacy shall investigate all activities related to Chapter[] * * * 3796 of the Revised Code *as they relate to dispensing operations.*

Ohio Adm.Code 3796:6-4-01 (emphasis added); *compare* Ohio Adm.Code 3796:5-6-01(A) (authorizing Department of Commerce to investigate entities licensed by the department); Ohio Adm.Code 3796:6-4-02 (board may investigate dispensaries and associated people).

That highlighted restriction as recognized by the board itself does not seem to have informed the Decision's analysis, which is phrased as predicated on far broader grounds.

{¶ 42} Similarly, the board recognizes what the trial court did not say in citing the provisions of R.C. 4729.24(B) relating to subpoenas for investigations into potential violations of Revised Code Chapter 3796: that "R.C. 4729.24(B) only applies in a subpoena involving 'patient record information.' " *Compare* Appellee's Brief at 3 *with* Decision at 7; Appellee's Brief at 22 ("[a] medical marijuana cultivator [like Standard Wellness] does not have patient records because it does not sell directly to patients"). The trial court appears to have used the language of R.C. 4729.24(B), untethered from its board-specific patient focus, to bolster a far more sweeping take that "[c]learly, the Board has the authority to issue a subpoena pursuant to an investigation into alleged violations of R.C. Chapter 3796." Decision at 7.

{¶ 43} Here, where the matter at hand does not appear to involve board-registered patients or caregivers, but does involve the cultivator Standard Wellness, the trial court's conclusion that the statutory authorization of board enforcement of "any rule" extends beyond "just * * * dispensaries," Decision at 6, provides just another signal that the Decision rests on an understanding of board authority broader than the statutes permit.

{¶ 44} We review a trial court's grant of a motion to enforce a subpoena under an abuse of discretion standard, except that "when a trial court's decision is based on a specific construction of law [we review] the decision under a de novo standard." *Ohio Elections Comm.,* 2004-Ohio-5253, at ¶ 18. The board's argument to us that it "has statutory authority to conduct an administrative investigation about whether dispensaries knowingly sold unlawfully grown marijuana" may be fair enough. *See* Appellee's Brief at 29 (capitalizations and emphasis omitted). But the trial court's Decision does not suggest that the trial court evaluated the requested subpoena in the limiting context of the board's responsibilities under Ohio's medical marijuana control program. It is for the trial court in the first instance to assess whether all the materials sought under the subpoena fall within the scope of the board's lawful investigative authority. Because the trial court here does not appear to have engaged in that analysis under a proper understanding of the statutes, we are unable to conduct a meaningful review of whether it acted arbitrarily. *Compare, e.g., MacDonald v. Authentic Invs., LLC,* 10th Dist. No. 15AP-801, 2016-Ohio-4640, ¶ 47 ("In

some circumstances, '[t]he trial court must set forth the basis for its decision with sufficient detail to allow proper appellate review' ") (citations omitted).  We therefore will return the matter to the trial court for further evaluation within the statutory context we have described.

{¶ 45}   We sustain Standard Wellness's second assignment of error in part, to the extent that the Decision failed to evaluate the requested subpoena in light of the board's statutorily defined (and thus statutorily constrained) investigative authority.  Because we are not in a position to prejudge the outcome of that trial court review, which will involve a match between factual submissions and the prevailing law, we overrule Standard Wellness's second assignment of error to the extent that it postulates that the trial court was required to deny the board's motion and to quash the subpoena.  We will remand the matter to the trial court so that it may perform its analysis consistent with this decision.

{¶ 46} Having sustained in part and overruled in part the second assignment of error, and having determined to remand the matter to the trial court for further analysis, we overrule the third and fourth assignments of error as rendered moot at this juncture.

{¶ 47} We reverse the judgment of the Franklin County Court of Common Pleas and remand the matter there for further proceedings consistent with this decision that subpoenas issued by the board on its authority under the medical marijuana control program must be related to investigations within the board's statutorily specified purview.

*Judgment reversed and cause remanded.*

LUPER SCHUSTER, P.J., and JAMISON, J., concur.

NELSON, J., retired, of the Tenth Appellate District, assigned
to active duty under the authority of the Ohio Constitution,
Article IV, Section 6(C).

_____